HAVERTY FURNITURE CO. *v.* FOUST.

(*Knoxville*, September Term, 1938.)

Opinion filed Feb. 18, 1939.

C. W. K. MEACHAM and W.D. MOON, both of Chattanooga, for plaintiff.

F. TODD MEACHAM and EDGAR D. WALTER, JR., both of Chattanooga, for defendant.

HENRY CLARK, W. M. HUGHES, C. C. MOORE, EDGAR D. WALTER, JR., and CHARLES F. ROLSTON, all of Chattanooga, members of the Unlawful Practice of Law Committee of the Chattanooga Bar Association, *amici curiae.*

FRANK B. GIANOTTI, of Memphis, D. W. LILLARD, of Etowah, LON P. MCFARLAND, of Lebanon, HARRY C. TEMPLETON, of Winchester, and JOSEPH A. CALDWELL, of Bristol, members of the Unlawful Practice of Law Committee of the Bar Association of Tennessee, *amici curiae.*

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is a replevin suit brought before a magistrate, where a judgment went for the plaintiff. On appeal to the Circuit Court, where the case was tried before the Judge without a jury on a stipulation of facts, the suit was dismissed on the ground that the writ of replevin issued in the Magistrate's Court in commencement of the action had been prepared by one not duly licensed and qualified to practice law, and was, therefore, null, void

and of no effect. The plaintiff, Haverty Furniture Company, has appealed and assigns errors on substantially the following grounds:

(1) That the mere filling in of a blank form procured from the office of the magistrate, in common use in such cases, did not constitute practicing law or doing law business in the sense of the Tennessee statute; (2) that the statute applies (Code, section 9982) which provides that, "Any person may conduct and manage his own case in any court of this state," it being insisted that plaintiff, although incorporated, is a "person" as defined in Code, section 14, which provides that, "the word 'person' includes a corporation, firm or association;" (3) that neither the plaintiff corporation nor its agent-employee, who acted for it in the particular above mentioned, was engaged in the practice of law or the doing of law business as defined in section 1 of chapter 30 of the Pub. Acts of 1935, brought into Michie's Annotated Code of 1938 as section 9983(1), it being contended that representation of a party in litigation by the party himself is not within the purview or prohibition of the laws of Tennessee regulating the practice of law, or the doing of law business; and that this exception applies to a corporation acting or appearing in its own interest or behalf through one of its regular employees, agents or representatives; and finally (4) that in any event the trial Court erred in holding the judgment of the magistrate's court void.

The pertinent facts are thus set forth in the stipulation filed in the trial Court:

"It is hereby stipulated and agreed, That in March and July, 1935, plaintiff, Haverty Furniture Company of Chattanooga, sold to defendant, Mrs. Bertha Foust, under Conditional Sales Contracts, the personal prop-

erty described in the writ of replevin in this case, for $66.40, payable in monthly installments; that the defendant, upon the date of the issuance of the writ of replevin, had defaulted in her monthly payments, and was indebted to plaintiff in an unpaid balance of $19.40, and that plaintiff is entitled to judgment for possession, if properly in Court in this cause.

"That on July 20, 1937, the day the writ of replevin in this case was issued, Reid Hartman, Credit Manager of the Haverty Furniture Company of Chattanooga, a Tennessee corporation, who is not a licensed lawyer, obtained a skeleton writ of replevin from Mack Fryar, a Justice of the Peace, as he had done on other like occasions, and filled in the printed form of affidavit, bond, and writ of replevin; signed and swore to the affidavit; signed the bond, and delivered the completed form of affidavit, bond and summons—the affidavit, bond and summons being on the same piece of paper—to Mack Fryar, Justice of the Peace of Hamilton County, Tennessee, who issued the writ of replevin, and delivered it to a deputy sheriff for execution; that said writ was issued for the purpose of recovering said personal property; that said writ was executed by the officer, and the case set for hearing July 29, 1937, at 4:00 P. M.; that plaintiff's agent, Reid Hartman, after the case was set for trial, for the first time called C. W. K. Meacham, a licensed attorney at the Chattanooga Bar and the regular legal representative of plaintiff, Haverty Furniture Company, notified him the case had been assigned for trial, and requested him to appear and try the case. Said attorney appeared and conducted the trial of the case in Court. Judgment was rendered for plaintiff, and the defendant appealed to the Circuit Court."

Re-stating the propositions presented by the assignment of errors, it will be seen that it is insisted, first, that the foregoing facts do not make out a case of practicing law or doing law business, because (1) the filling in of the blank forms described, without more, was the performance of a merely clerical or ministerial act, calling for the exercise of none of the intellectual, moral or professional qualifications required in and for the practice of the law—an act which any layman, who could read and write, might properly perform; and (2) because the definitions adopted by the Legislature in the Act of 1935 expressly so limit the meaning of the terms, the "practice of law" and "law business," as to exclude the parties and conduct presented by the facts of this case.

Elaborate briefs have been filed on behalf of the defendant below, not only by counsel for the defendant, but by a committee of the State Bar Association as *Amicus Curiae*. The argument advanced is, first, that the incipient act, however simple, of filling in these blanks, was practicing law or doing law business. It is conceded that if the plaintiff had not been a corporation then the questions here made could not arise, because of the express provision of our statute reserving to every person the right to represent himself. So that, if this Court should hold that "the word 'person' includes a corporation," etc. Code, section 14, when considered in connection with the provision that "any person may conduct and manage his own case," etc., Code, section 9982, this holding would be determinative.

It thus appears that the consideration of this case may well be confined to one of several propositions. We have chosen to dispose of it upon a construction of our Tennessee statute which is full and explicit and which must

control in this State and Court, without regard to the rulings in other jurisdictions, many of which are cited on the briefs, and which turn largely on local laws.

Prior to the passage of Chapter 30, Pub. Acts of 1935, we had no statute defining the "practice of law" and the "doing of law business." By the Pub. Acts of 1919, Chapter 42, the Legislature had undertaken to control and regulate the conduct of those engaged in the practice of law, and the Code has carried for many years various provisions requiring lawyers to be licensed, providing for examination and admission to the bar, excluding certain office holders from practicing law, etc., but in 1935 for the first time, in order to settle disputes which were frequently arising, the Legislature passed this carefully and explicitly worded act defining the "practice of law" and "law business." In our opinion the controversy now presented is determined by the express terms of section 1, Chapter 30, Pub. Acts of 1935, which we quote, italicizing language which we regard as particularly pertinent:

"The 'practice of law' is hereby defined to be and is the appearance *as an advocate* in a *representative capacity* or the drawing of papers, pleadings or documents or the performance of any act *in such capacity* in connection with proceedings pending or prospective before any Court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies. The 'law business' is hereby defined to be and is the advising or counseling *for a valuable consideration* of any person, firm, association, or corporation, as to any secular law, or the drawing or the procuring of or assisting in the drawing *for a valuable consideration* of any paper, document or instrument

affecting or relating to secular rights, or the doing of *any act* for a *valuable consideration* in a representative capacity, obtaining or tending to secure for any person, firm, association or corporation any property or property rights whatsoever.''

■ It is obvious that the conduct here challenged is not the ''law business,'' as here defined, since, in repeated and unmistakable language, it is provided that no act may be so classed unless done for ''a valuable consideration.'' Whatever else may be said of the case before us, no ''valuable consideration'' appears.

■ It may be remarked, in passing, that this limitation is consistent with what is, perhaps, the fundamental purpose underlying the enactment of the laws regulating admission to the bar and the practice of the profession, that purpose being to insure to the public the highest quality of service possible from those offering their services to the public for a consideration. In ancient times the fee of the lawyer played little, if any, part in his professional life and efforts. It was once never a charge, but passed only as a gift. But modern times and trends have changed all of this and it was because the profession had become so commercialized that legislation became necessary. In other words, but for this element of consideration in connection with ''law business,'' little regulatory legislation would be needed. In this view, it was natural and proper that the Legislature should limit that ''law business'' which the Act regulates to paid business, that done for a ''valuable consideration.''

■■ Looking back to the first paragraph of this section, it will be seen that, with equal emphasis, the act limits the ''practice of law'' to (1) ''appearance as an advocate'' and (2) to such appearance in ''a representa-

tive capacity." Even if it might reasonably be argued, which we are not prepared to concede, that there was an "appearance," under the facts of this case—that the mere filling in of these blanks out of Court was an "appearance,"—certainly it cannot be said that there was an "appearance as an advocate." This would be to disregard the accepted meaning of this term, which has sentimental associations prized by our profession. The primary meaning of "advocate" given by Webster's Unabridged Dictionary is "one who pleads the cause of another; specifically, one who pleads the cause of another before a tribunal or judicial court; a counselor." The term comes down from the Roman law; is used in the English and French courts to signify the lawyer, whether barrister, counselor, attorney or solicitor, in different jurisdictions, variously employed, but signifies always the lawyer. To class or call one an advocate whose sole claim to the classification is that he, being a clerk or other office employee of the plaintiff, engaged in selling furniture, had filled out a blank replevin writ and handed it to the magistrate, would be a patent misnomer. Nor does this employee of plaintiff, in performing this service, act within the limiting phrase "in a representative capacity." It seems too clear for argument that the conduct of this agent of plaintiff does not constitute an "appearance as an advocate," as defined in the first two lines of the section. It will be observed that, as the Act proceeds, it passes from "appearance as an advocate" to embrace, within the definition of "practice of law," "the drawing of papers, pleadings or documents or the performance of any act *in such capacity* in connection with proceedings pending or prospective before any Court," etc. It is significant that the draughtsman did not fail to insert the

words we have italicised, "in such capacity," thus referring back to and emphasizing the limitation in application of the Act to one acting in "a representative capacity." So that, even if the agent was "drawing papers," etc., he was not engaging in the practice of law, unless he was doing so in "a representative capacity."

Now, the argument appears to be—and the issue really narrows to this—that the employee of plaintiff was a representative of plaintiff, a corporation, and acted, therefore, in "a representative capacity," within the definition in the Act, in filling in these papers. Is such a construction reconcilable with the context? Bouvier defines representative as, "one who represents or is in the place of another." Is it not apparent that the statute is dealing with a situation in which the representative is another than the party litigant, one wholly distinct from him, or it—if a corporation? Can it be possible that this phrase, in its context, means a corporate administrative officer or agent, a part of the corporate organization and machinery, by and through which it normally and necessarily acts and speaks? It is true, as argued, that a stockholder in a corporation is a legal entity distinct from the corporation itself, and the stockholder's action is not that of the corporation. But, on the contrary, this is not true of the authorized administrative officer of the corporation. His act on behalf of the corporation is that of the corporation. The two are not one and another. So merged are their identities, when the agent is acting for the corporation (the only way it can act at all), that the one may not be an accessory of the other. 13 Am. Jur., sec. 1133. Our statute makes it unlawful for a corporation to appear or act for

another in the business or practice of law. And that it does so by or through its officers, agents or employees, is, of course, immaterial. The following statement of the pertinent distinction appears to be in point:

"Defendant has failed to note the distinction between a corporate act performed by a person employed to act as its agent and attorney and a like act done by the corporation through its own administrative officers. A corporation is a legal entity, often spoken of as an artificial person and by the same fiction like a natural body having power to act and reason. A corporation may employ an agent or attorney to act on its behalf in the same manner as a natural person, but the act of the corporate officer in employing an agent is the act of the corporation. The officers of a corporation are the vehicle and conduit by and through which it is given being and from which the power to act and reason springs. A wide difference exists between acting for oneself by an inherent faculty and the employment of another person to act for and in one's stead. When a corporation does not go outside its own corporate machinery in the performance of a corporate act, it is acting in person and upon an equal footing with a natural person, including the right to sue in person." *Sellent-Repent Corp.* v. *Queens Borough Gas & Electric Co.*, 160 Misc., 920, 290 N. Y. S., 887, 889.

█ █ We find no evidence whatever here that it was the purpose of this credit manager of the plaintiff to act for the plaintiff corporation independently of, or otherwise than as a detail of his regular employment as such credit manager, or that it was the intention of the corporation to have, or authorize, him so to act. This clearly appears from the fact that the regularly retained legal counsel of plaintiff was notified and called upon

to represent plaintiff in the legal proceedings before the trial magistrate and thereafter. He did not undertake to act as an "advocate" or otherwise as a lawyer representative—which we conceive to be the sense in which the term is used. In other words, the phrase "as an advocate in a representative capacity" implies a representation distinct from officer or other regular administrative corporate employee representation. This construction is demanded by the context when the section as a whole, and the purpose underlying this legislation is considered. This purpose was to prevent the public from being preyed upon by those who for a valuable consideration seek to perform services which require skill, training and character, without adequate qualifications. Divested of the element of gain or profit, the practice of law or law business would have no attraction for them, and in recognition of this there runs through the Act under consideration the inclusion of valuable consideration in the definition given of the broad term law business. And this view is reenforced by the provisions of the succeeding sections of the Act of 1935 which prescribe penalties for violations of the Act based on the consideration which has been paid in any case.

▉▉▉ For the reasons indicated, we are not of opinion that plaintiff or its agent was engaged in the practice of law or was doing law business.

This holding being conclusive of the case, it becomes unnecessary to consider other grounds of the assignments plausibly argued. On the ground stated, the judgment is reversed, and it being agreed in the stipulation that aside from the matters herein considered the plaintiff was entitled to recover, judgment will be here entered for the Haverty Furniture Company.