**STATE of Tennessee, Appellee,**

v.

**Gary S. SOWDER, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Sept. 25, 1991.

Permission to Appeal Denied by Supreme Court Feb. 24, 1992.

Gary S. Sowder, pro se.

Charles W. Burson, Atty. Gen., Joel W. Perry, Asst. Atty. Gen., Nashville, Don W. Strother, Pro Tem., Dist. Atty. Gen. and Chris B. Craft, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

SCOTT, Judge.

The appellant was convicted of practicing optometry without a license, for which he was sentenced to six months in the Shelby County Workhouse and ordered to pay a fine in the amount of $500.00. Suspension of the sentence was denied after the appellant indicated that he would not comply with the conditions of probation.

Much aggrieved by his conviction, the appellant has presented seventeen issues, all of which the state contends were waived by his failure to file a motion for a new trial. However, failure to timely file a motion for a new trial results in the waiver of only those issues which may result in the granting of a new trial. *State v. Durham*, 614 S.W.2d 815, 816 (Tenn.Crim.App. 1981). Issues which, if meritorious, would mandate a dismissal may still be considered, even though not listed in the motion for a new trial. *Id.* Thus, this Court will consider the issues relating to the constitutionality of the statute, the jurisdiction of the trial court and the sufficiency of the indictments.

In the first issue the appellant contends that the trial court lacked jurisdiction because the alleged violation was civil rather than criminal. T.C.A. § 63–8–101, et. seq., first enacted in 1925, and known as the "Optometry Law" regulates the practice of optometry. Chap. 99, Public Acts of 1925. T.C.A. § 63–8–102(12), quoted elsewhere herein, defines the "(p)ractice of optometry as a profession." T.C.A. § 63–8–113(a)(1) provides that "(i)t is unlawful for any person not duly licensed in accordance with this chapter to: "(e)ngage in the practice of optometry." T.C.A. § 63–8–122 sets forth the penalty for violations of the chapter. At the time of the appellant's offense, the statute provided as follows:

> Any person violating any of the provisions of this chapter shall be guilty of a misdemeanor, and shall, for each offense, be fined not less than one hundred dollars ($100) and not exceeding four hundred dollars ($400) or imprisoned in the county jail not more than eleven (11) months and twenty-nine (29) days, or both, at the discretion of the judge trying the case.[1]

It is clear that a violation of T.C.A. § 63–8–113 is a "misdemeanor" as declared by the legislature, misdemeanors being violations of the law punishable by fine, imprisonment for less than a year, or both. T.C.A. § 39–11–110 (at the time of this offense, codified at T.C.A. § 39–1–103.) This issue has no merit.

In another issue the appellant contends that the trial court lacked jurisdiction over him because the provisions of the optometry law did not apply to him because he is a "natural" person. He contends that the state only has the authority to compel "artificial" persons to enter into a "privileged contract" like a license to practice optometry.[2]

Neither the Constitution nor the legislature has made any jurisdictional distinctions based upon the status of individual citizens. Indeed, to do so would likely be in violation of Section 1 of the Fourteenth Amendment of the United States Constitution, which provides that *"(a)ll persons* born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." (Emphasis added). States are forbidden, among other things, to "deny to any person within its jurisdiction the equal protection of the laws." *State of Tennessee v. William Joseph Keller*, 813 S.W.2d 146, 149 (Tenn. Crim.App.1991). Thus, whether one is a "natural" person or an "artificial" person, states cannot deny equal protection to either. This issue has no merit.

In another attack on the jurisdiction of the court, he contends that he was not charged under any statute.

The indictment provides as follows:

THE GRAND JURORS of the State of Tennessee, duly elected, empaneled,

---

1. The statute now provides that violations of the statute are Class B misdemeanors. The penalty now is imprisonment for not more than six months or a fine not to exceed $500.00, or both. T.C.A. §§ 63–8–122, 40–35–111(e)(2).

2. The term "artificial person" is a legal euphemism for a corporation which "is a legal entity, often spoken of as an artificial person and by the same fiction like a natural body having power to act and reason." *Haverty Furniture Co. v. Foust,* 174 Tenn. 203, 124 S.W.2d 694, 698 (1939).

sworn and charged to inquire in and for the body of the County of Shelby, in the State aforesaid, upon their oath, present that

GARY SOWDER

during a period between February 24, 1989 and April 4, 1989 late of the County aforesaid, heretofore, to-wit before the finding of this indictment, in the County aforesaid, did unlawfully engage in the practice of Optometry at the time when he, the said GARY SOWDER, was not licensed to do so by the State of Tennessee,

against the peace and dignity of the State of Tennessee.

Clearly, this indictment charged the appellant with a violation of T.C.A. § 63–8–113(a)(1). This issue has no merit.

■ In another issue the appellant contends that the statute violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution because it is "arbitrary class legislation." In *Saunders v. Swann*, 155 Tenn. 310, 292 S.W. 458 (1927), our Supreme Court held that Chapter 99 of the Public Acts of 1925, the optometry law, is constitutional, noting that the courts of the states having similar statutes have "uniformly held these enactments to be valid exercise of the police power." The statute makes no distinction between members of the class of individuals known as "optometrists." All those wishing to practice optometry in Tennessee must be licensed and attain the certificate of fitness and certificate of registration provided by T.C.A. § 63–8–102(2) and (3). The practice of optometry without being so licensed is a violation of T.C.A. § 63–8–113(a)(1). Furthermore, the certificate of registration must be renewed annually. T.C.A. § 63–8–119(a). This issue has no merit.

■ In another issue the appellant contends that the statute is constitutionally invalid because the state has no authority to regulate the practice of optometry. As previously noted, our Supreme Court has held that the legislature has such power, as a valid exercise of the "police power." *Saunders v. Swann*, supra.

■ Police power embraces regulations designed to promote convenience or general welfare and not merely those in the interest of public health, safety and morals. "This police power of the Legislature embraces all matters reasonably deemed necessary or expedient for the safety, health, morals, comfort, domestic peace, private happiness, and welfare of the people." *McKesson & Robbins, Inc. v. Government Employees Dept. Store*, 211 Tenn. 494, 365 S.W.2d 890, 892 (1963).

■ When one attacks the constitutionality of a statute, the "heavy" burden of proof is on the attacker. *State ex. rel. Maner v. Leech*, 588 S.W.2d 534, 540 (Tenn. 1979). An act of the legislature will be upheld if it can be justified "upon any rational ground." *McConnell v. City of Lebanon*, 203 Tenn. 498, 314 S.W.2d 12, 19 (1958). In other words, if any possible reason can be conceived to justify the legislation, and if the reasonableness of the act is fairly debatable, the statute will be held constitutional. *Phillips v. State*, 202 Tenn. 402, 304 S.W.2d 614, 617 (1957). In *Tennessee Board of Dispensing Opticians v. Eyear Corp.*, 218 Tenn. 60, 400 S.W.2d 734, 742 (1966), our Supreme Court held that legislation concerning the care of the eyes is a "reasonable exercise of police power and is exclusively for the determination of the Legislature and not subject to judicial review." In that case the corporation was challenging the power of the Tennessee Board of Dispensing Opticians to regulate the practice of opticians. The practice of dispensing opticians is defined as: "the preparation, adaptation and dispensing of lenses, spectacles, eye glasses and optical devices to the intended user thereof on the written prescription of a physician or optometrist, duly licensed to practice his profession and the dispensing of frames as a

unit or individually to the intended user thereof." T.C.A. § 63–14–102.

It is clearly obvious that the public good requires that those who practice optometry, like those who practice as dispensing opticians, be licensed. T.C.A. § 63–8–102(12) defines the "(p)ractice of optometry as a profession" as:

(A) The employment of objective or subjective methods (either or both) for the purpose of ascertaining defects of vision or muscular anomalies or other abnormal conditions of the eyes;

(B) The prescribing of ophthalmic lenses or prisms to remedy or relieve defects of vision or muscular anomalies;

(C) The orthoptic training, the adjusting, or fitting or adapting of lenses or prisms or eyeglasses or spectacles to remedy or relieve defects of vision or muscular anomalies;

(D) The supplying, replacement or duplication of an ophthalmic lens or frame; or

(E) The performance of external and internal examination of the human eye or eyelid, and any diagnosis, treatment (other than by surgery) of patients with infections, inflammations and abrasions of the eye or eyelid with topically applied drops, ointments or creams, or any referral of patients for consultation or treatment. Authority hereunder shall also include the authority to administer benadryl, epinephrine or equivalent medication to counteract anaphylaxis or anaphylactic reaction. An optometrist may use or prescribe topical steroids for not more than seven (7) calendar days from the onset of treatment. Optometrists treating patients under this section shall be held to the same standard of care as that of primary care physicians providing similar services. Treatment under this section may include the removal of superficial foreign bodies from the conjunctiva of the eye and eyelid. Treatment of glaucoma and/or iritis is not authorized.

From this definition, it is clear that one who would undertake to perform these acts in relation to the eyes of human beings must be properly trained, licensed and regulated by someone. The eye being the intricate and irreparable organ that it is makes such training, licensing and regulation absolutely imperative. The General Assembly of this State obviously has the power to regulate the practice of the profession of optometry. Given the nature of the eye, the legislature certainly has the power to regulate activities relating to its care, if it has the power to regulate anything at all. This issue has no merit.

In another issue the appellant contends that he was not properly charged and challenges the sufficiency of the indictment.

The appellant correctly states that he has a constitutional right to be charged by an indictment or presentment. The charging instrument under which he was charged is clearly denominated as an "indictment," was returned by the Grand Jury of Shelby County on December 13, 1989 as a true bill and was signed by the foreman of the Grand Jury. The indictment in this case meets all of the statutory requirements, in that it contains the name of the state, county and court, the facts constituting the offense in ordinary and concise language and the identity of the person charged. T.C.A. § 40–13–201, 202, 203.

█ The appellant contends that the indictment in the language heretofore quoted states only legal conclusions and is, therefore, insufficient.

█ An indictment must be more than just a mere statement of a legal result or conclusion and it must state the facts in ordinary and concise language in a manner that would enable a person of common understanding to know what is intended, and with a degree of certainty which would enable the court upon conviction, to pronounce the proper judgment. *Warden v. State*, 214 Tenn. 391, 381 S.W.2d 244, 245 (1964). The indictment need not be specific regarding the time or place of the offense, nor need it demonstrate facts conferring jurisdiction as long as such facts are intro-

duced at the trial. T.C.A. § 40-13-207, 208 and 210. The test for determining the sufficiency of an indictment is not whether it could have been written in a more clear and defined manner, but is "whether it contains the elements of the offense to be charged and sufficiently apprises a defendant of what he must be prepared to meet, and whether the record shows accurately to what extent he may plead former acquittal or conviction in case any other proceedings are taken against him for the offense." *Morris v. State,* 608 S.W.2d 154, 155 (Tenn. Crim.App.1980).

It is obvious from the language of this indictment that the appellant, who is an optometrist, was not confused about the offense he was required to defend and, if any other proceedings are ever taken against him for this offense, at this time and place he can certainly plead "former conviction." This issue has no merit.

■ In another issue the appellant contends that he was denied his constitutional right to counsel, even though he requested that he be allowed to represent himself and the trial judge took great pains to insure that he understood the hazards and pitfalls of self-representation as required by our Supreme Court in *State v. Northington,* 667 S.W.2d 57, 60 (Tenn.1984). The appellant also contends that his right to counsel includes the right to be represented by a non-lawyer.[3] Courts who have considered the issue have consistently held that the accused has no right to representation by a lay person. *United States v. Whitesel,* 543 F.2d 1176, 1178 (6th Cir.1976). However, this issue was waived because the appellant did not file a motion for a new trial. Rule 3(e), T.R.A.P.

In another issue the appellant contends that a proper plea was never entered. Again, this issue was not raised in a motion for a new trial and was waived. Rule 3(e), T.R.A.P.

■ The appellant also makes a number of other contentions, such as whether the State of Tennessee has "monopolized" the word "optometry" and other such allegations. However, these assertions are not supported by arguments or citations of authority. Thus, they were waived. Rule 27(a)(7), T.R.A.P., Rule 10(b), Rules of the Tennessee Court of Criminal Appeals, *State v. Galloway,* 696 S.W.2d 364, 368 (Tenn.Crim.App.1985).

■ Finally, we note an error which was not raised by either the appellant or the state. Under Rule 52(b), Tenn.R.Crim. P., an appellate court has the power to notice at any time an error which has affected the substantial rights of an accused where necessary to do substantial justice. T.C.A. § 63-8-122, as it existed at the time of the appellant's offense, provided that the maximum fine for this offense was $400.00. The trial judge incorrectly instructed the jury that they could fine the appellant not more than $500.00 and the jury set the fine at that amount.

Obviously the jury has no authority to fine a defendant more than the amount provided by law. The record indicates that the jury intended to fine the appellant the maximum amount. Therefore, in order to do substantial justice and to conform the judgment with the law, we reduce the amount of the fine from $500.00 to $400.00.

As modified, the judgment is affirmed.

DWYER and SUMMERS, JJ., concur.

---

**3.** Apparently "lawyers" are the only professionals who refer to those outside our profession as "non-lawyers." No one refers to one who is not a dentist as a "non-dentist" or one who is not a plumber as a "non-plumber." Graham, *The Supremest Court in the World,* 21 The Vanderbilt Lawyer 8, 14 (Spring 1991).