### In re Brenda Faye CLEMMONS, Debtor.

### Bankruptcy No. 392–09717.

United States Bankruptcy Court,
M.D. Tennessee.

Feb. 4, 1993.

---

L. Wearen Hughes, Catherine Gray Clark, Bass, Berry & Sims, Nashville, TN, for ITT Financial.

David E. Phillips, Nashville, TN, for debtor.

Henry E. Hildebrand, Nashville, TN, Chapter 13 Trustee.

Beth R. Derrick, Nashville, TN, U.S. Trustee.

## ORDER REGARDING NON–LAWYERS AT § 341 MEETINGS

GEORGE C. PAINE II, Bankruptcy Judge.

A hearing was held on January 25, 1993, on the objection to confirmation and motion to reopen meeting of creditors filed by ITT Financial Services Corporation ("ITT"). In attendance were L. Wearen Hughes and Catherine Gray Clark, counsel for ITT; Beth R. Derrick, an attorney serving as Assistant United States Trustee for this District; Henry E. Hildebrand, III, an attorney serving as one of the Chapter 13 Standing Trustees for this District; Samuel K. Crocker, an attorney who is on the panel of Chapter 7 Trustees for this District; E. Ford Holman, counsel for the Internal Revenue Service; and David E. Phillips, counsel for the Debtor. No opposition was filed or raised to the motion and objection; in fact, all in attendance supported the motion. Upon the statements made in court, the arguments of counsel, and the record in this case, the court holds that the questioning of a debtor at a § 341 meeting by a person who is not a lawyer is permitted under the Bankruptcy Code and does not constitute the unauthorized practice of law in Tennessee. The motion should therefore be granted and ITT's employee should be permitted to question the Debtor.

## FACTS

This case was commenced by the filing of Debtor's petition on November 13, 1992. ITT asserts a claim against the Debtor in the amount of $2,261.10 which is secured by a security interest in certain personal property of the Debtor. The Debtor's proposed Chapter 13 Plan, however, listed ITT as an unsecured creditor. Melissa Smith, one of ITT's local employees, attended the meeting of creditors in this case held on December 17, 1992, as part of her regular employment duties, and sought permission to ask the Debtor questions relating to the location and use of the collateral securing ITT's claim, which questions were within the scope of examination permitted under Bankruptcy Rule 2004. Ms. Smith did not receive any additional compensation for attending this meeting.

The Chapter 13 trustee refused to permit Ms. Smith to ask any questions because she was not a lawyer. The basis for this refusal was Advisory Ethics Opinions 92–A–473 and 92–A–473(a) issued by the Disciplinary Counsel of the Board of Professional Responsibility of the Supreme Court of Tennessee (the "Board") which opined that the questioning of a debtor by a non-lawyer at a § 341 meeting constitutes the unauthorized practice of law, followed by a directive to Trustees from the U.S. Trustee for this region based upon the Advisory Opinion(s). As a result of this refusal, ITT was unable to obtain the information necessary to evaluate the proposed treatment of its claim under the Debtor's Chapter 13 Plan, and therefore, through counsel, filed an objection to confirmation of the Plan and motion requesting the court to reopen the meeting of creditors to permit its employee to question the Debtor.

## LAW

For the reasons set forth below, this court holds that the Board's conclusion is erroneous, and questioning of the Debtor

by non-lawyers at § 341 meetings is permissible under the Bankruptcy Code and does not constitute the unauthorized practice of law under Tennessee law.

## I. *NATURE AND PURPOSE OF THE § 341 MEETING*

■ Section 341 of Bankruptcy Code requires that the U.S. Trustee or his designate convene and preside over a meeting of creditors within a reasonable time after the order for relief has been entered in a case. The debtor is required to appear at the meeting and submit to examination under oath, and "creditors ... may examine the debtor" at the meeting. 11 U.S.C. § 343. Pursuant to § 341(c), the Court may not preside at or even attend such meetings.

The § 341 examination is a simple and inexpensive administrative examination for the benefit of creditors and trustees. It is not an adversary process, but simply a fact finding process. *In re Markley*, B87–1429, slip op. at 4 (Bankr.N.D.Ohio 1987); *see In re Kincaid*, 146 B.R. 387, 388–89 (Bank. W.D.Tenn.1992). If an objection or other legal dispute arises during the course of the meeting, that dispute will be resolved outside the meeting by an unbiased judge. *Kincaid*, at 388–89. The exclusion of the court from the meeting thus prevents the judge from "hear[ing] evidence outside the context of the dispute that he must decide", H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 331 (1977), including matters which might later be inadmissible or prejudicial, *see In re Wittman*, R88–3244, slip op. at 5 (D.Md.1989), and reflects the general Congressional purpose of "remov[ing] the bankruptcy judge from administrative matters in the case." H.R. No. 95–595 at 331.

The exclusion of the court from § 341 meetings and the process of separating out issues requiring judicial resolution prevent the § 341 meeting from being an adjudicative hearing that settles controversies. *See Wittman*, slip op. at 6. Courts addressing this issue have uniformly recognized the nonadjudicative nature of the meeting. *See Wittman*, slip op. at 11; *Kincaid*, at 388; *In re Gravitt*, 91–00017, slip op. at 3, 1991 WL 497770 (Bankr.E.D.Ky.1991); *Markley*, slip op. at 4. *See also In re Messier*, 144 B.R. 617, 619 (Bankr.D.R.I. 1992) (acknowledging "administrative nature and scope of the 341 meeting"); Opinion of the Virginia State Bar Association Section for the Unauthorized Practice of Law dated December 4, 1986 ("Virginia Bar Opinion"), p. 2 (§ 341 meeting is not a "tribunal" under Virginia law). Those courts have therefore held that non-lawyers may question the debtor at a § 341 meeting. *Wittman*, slip op. at 11; *Messier*, 144 B.R. at 619; *Kincaid*, at 388; *Gravitt*, slip op. at 3; *Markley*, slip op. at 5. The Department of Justice likewise recognizes that "the meeting is not a judicial proceeding" and that persons who are not lawyers may question the Debtor at the meeting. *Wittman*, slip op. at 9–10; *Kincaid*, at 389 (quoting *Handbook For Chapter 7 Trustees* published by the Executive Office for the U.S. Trustees, pp. 66–68).

Because the § 341 meeting is simply an administrative meeting and not an adjudicative proceeding, nothing in the Bankruptcy Code requires creditors desiring to question the debtor to be represented by lawyers. Even the trustee, who presides over the meeting and is expressly permitted to examine the Debtor under § 343, does not have to be a lawyer. *See* 11 U.S.C. § 321.[1] Thus, questioning by non-lawyers at § 341 meetings is permitted under the Bankruptcy Code.

## II. *TENNESSEE LAW*

■ In addition to being permitted under the Bankruptcy Code, the questioning of the debtor by non-lawyers at § 341 meetings does not constitute the unauthorized practice of law under Tennessee law. Section 23–3–103 of the Tennessee Code Annotated provides that "no person shall engage in the 'practice of law' or do 'law business,' or both ... unless he shall have been duly

---

1. While the present practice in this district is for trustees to be lawyers, non-lawyer trustees regularly conduct § 341 meetings in other districts, such as the neighboring Eastern District of Ten-nessee, in which the Chapter 13 Standing Trustee, who is estimated to have conducted some 40,000 § 341 meetings, is not a lawyer.

licensed therefore, ... nor shall any association or corporation engage in the 'practice of the law' or do 'law business,' or both...." The "practice of law" is defined as:

the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies.

T.C.A. § 23–3–101(a). "Law business" is defined to include "the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to secure for any person, firm, association or corporation any property or property rights whatsoever." T.C.A. § 23–3–101(b).

In construing T.C.A. §§ 23–3–101 and – 103, the Tennessee Supreme Court upheld the constitutionality of those statutes on grounds that the right of a person to engage in any profession or occupation "is subject to the police power of the legislature, in the protection of its people against incompetent persons and harmful practices, to prescribe the qualifications required of persons authorized to practice a profession requiring special knowledge or skill, such as the profession of law...." *Lamb v. Whitaker*, 171 Tenn. 485, 489, 105 S.W.2d 105 (1937). Two years later, the court noted that "the fundamental purpose underlying the enactment of the laws regulating admission to the bar and the practice of the profession [is] to ensure to the public the highest quality of service possible from those offering their services to the public for a consideration." *Haverty Furniture Company v. Foust*, 174 Tenn. 203, 210, 124 S.W.2d 694 (1939).

 Since the purpose of this statute is to protect the public from incompetent persons offering their services for consideration, the definition of "practice of law"

under the statute is clearly limited to "appearance as an advocate ... in a representative capacity." *See Haverty Furniture*, 174 Tenn. at 210–11, 124 S.W.2d 694. Applying this definition to § 341 meetings, it is clear that such meetings do not involve the practice of law because the meeting "does not in any way involve the concept of advocacy as the word "advocate" is used or contemplated in [T.C.A. §] 23–3–101(a)." *In re Kincaid*, 146 B.R. 387, 390 (Bankr. W.D.Tenn.1992).

As the *Haverty Furniture* court noted, the primary meaning of "advocate" is "one who pleads the cause of another before a tribunal or judicial court". 174 Tenn. at 211, 124 S.W.2d 694. Because the § 341 meeting is clearly nonadjudicative in nature, it has none of the characteristics of a "tribunal or judicial court", nor does the questioning of the Debtor constitute "pleading the cause of another." The meeting is simply for the purpose of gathering information, not for taking legal action or seeking relief from the court. The trustee presiding over the meeting has no authority to decide disputes, *see Kincaid*, at 388–89, and the court, which will eventually decide any such disputes, is not even permitted to attend the meeting. For these reasons, persons attending the meeting and questioning the Debtor do not act as advocates.

Similarly, the questioning of the debtor at a § 341 meeting is not the "law business" within the contemplation of T.C.A. § 23–3–101(b) because it is not an act "obtaining or tending to secure ... property or property rights" for any person or entity. Further, the employee in this case received no "valuable consideration" for attending the meeting other than her normal salary. *See Haverty Furniture*, 174 Tenn. at 210, 124 S.W.2d 694.[2]

In addition to § 23–3–101, other Tennessee provisions indicate that the questioning of a debtor at a § 341 meeting is not the type of activity which constitutes the unauthorized practice of law. Ethical Consider-

---

**2.** Even the Advisory Opinions discussed *infra* did not conclude that participation at a § 341 meeting constituted the "law business" under

§ 23–3–101(b); they focused only on the "practice of law" portion of the statute.

ation 3–5 in the Tennessee Code of Professional Responsibility, found at Rule 8 of the Rules of the Supreme Court of Tennessee, indicates that the practice of law involves the exercise of "professional legal judgment", noting that non-lawyers may engage in activities and occupations which do not require such legal judgment. Although questioning a debtor at a § 341 meeting about his intentions or the location of a creditor's collateral may touch on some common issues of debtor/creditor transactions, such factual questions do not require the exercise of "professional legal judgment" as contemplated by the Ethical Consideration.

As the above demonstrates, participation in a § 341 meeting does not involve the "practice of law" or the "law business" as defined by T.C.A. § 23–3–101. Thus, such participation by a nonlawyer does not constitute the unauthorized practice of law under T.C.A. § 23–3–103.

### III. *THE ADVISORY OPINIONS*

Because neither the Bankruptcy Code nor T.C.A. §§ 23–3–101 *et seq.*, as construed by the Tennessee Supreme Court in *Lamb* and *Haverty Furniture*, would prevent a non-lawyer from questioning the debtor at a § 341 meeting, the conclusion in Advisory Ethics Opinions 92–A–473 and 92–A–473(a) that such questioning would constitute the unauthorized practice of law is untenable. There is simply nothing in the § 341 meeting that involves the practice of law as defined by the Tennessee statute.

In opining that participation in the meeting constitutes the practice of law, the Advisory Opinions reflect a misunderstanding of what actually happens at a § 341 meeting. There is no indication either from the Opinions themselves or from the statements made in this case that the Board ever heard any proof regarding the nature and purpose of § 341 meetings or that any member of the Board or its Disciplinary Counsel ever attended such a meeting before the issuance of the Advisory Opinions. In fact, the statements in this case suggest that the Board did not even want to hear

any testimony about these meetings. After the Advisory Opinions were issued, a request was made for a formal opinion and for a hearing on this issue. Several individuals specifically asked the Board to be heard in connection with this matter, but the request was not granted. The Board ultimately declined to issue a formal opinion.

In contrast, at the hearing on this matter, the court heard from several individuals with extensive experience in attending or conducting § 341 meetings. Their statements unanimously supported the conclusion that such meetings do not involve the practice of law. In addition to the arguments of ITT's counsel, the court heard statements from the Chapter 13 Standing Trustee, who has conducted approximately 36,000 § 341 meetings; from one of the Chapter 7 panel trustees, who has conducted approximately 8,000 such meetings; and from the Assistant United States Trustee, who has conducted at least 200 to 300 meetings in Chapter 11 cases. The court also heard the statements of counsel for the Internal Revenue Service and the Debtor.

Having heard the statements and arguments of these individuals having extensive firsthand experience with § 341 meetings and with the prior practice permitting non-lawyer participation in such meetings, the conclusion is inescapable that such meetings do not involve the practice of law as defined by the Tennessee statute. To the extent they hold otherwise, the Advisory Opinions are simply erroneous.

Because this court holds that the activity at issue does not constitute the unauthorized practice of law under the Tennessee statute, the court need not, as the Advisory Opinions suggest, rely on the Supremacy Clause of the United States Constitution to support its holding. The court's determination that the conduct involved in this matter does not constitute the unauthorized practice of law is based on Tennessee law and in no way overrules, rejects, or creates an exception to such law. If this court had determined that the questioning of debtors by nonlawyers at § 341 meetings did con-

865

stitute the unauthorized practice of law under T.C.A. § 23–3–101 *et seq.*, such activity would not be tolerated by this court. To suggest, as the Advisory Opinions do, that this court or the *Kincaid* court would or should simply ignore the Tennessee statute and permit what was otherwise the unauthorized practice of law, is disingenuous.

## CONCLUSION

In addition to not constituting the unauthorized practice of law, questioning of the debtor by non-lawyers at § 341 meetings has practical benefits in a bankruptcy case. Where the nonlawyer is an employee of a creditor, such employee often has extensive knowledge of the debtor gained over a long course of dealings between the parties. This familiarity makes the employee less intimidating to the debtor and can promote more focused questioning, in addition to helping the trustee presiding at the meeting to gain a better understanding of the debtor's assets and operations. All of these factors further the information gathering purpose of the meeting, which encourages more efficient administration of the case and can even reduce the number of disputes requiring judicial resolution in the case.

Further, permitting non-lawyers to appear at § 341 meetings helps contain costs and enables more creditors to participate in such meetings. Many creditors holding relatively small claims against a debtor simply cannot afford the costs of an attorney to attend the meeting, not to mention the time necessary to educate the attorney about the facts of their claims and their relationships with the debtor. Larger creditors who can afford lawyers usually can be expected to pass the cost on to other borrowers or trade debtors in the form of higher interest rates or higher prices. Also, a prohibition on non-lawyers participating in § 341 meetings would necessarily require nonlawyer trustees to hire lawyers to conduct the meetings and question debtors, thereby increasing the costs of the case. Thus, it makes economic sense and is in the interest of the public to permit non-lawyers to appear at § 341 meetings to avoid these costs.

Because the examination of the debtor at a § 341 meeting of creditors by a person who is not a lawyer is permitted under the Bankruptcy Code and does not constitute the unauthorized practice of law under Tennessee law, ITT's motion is hereby GRANTED.