In re John MALONEY and Christine Maloney, Debtors.

SEARS, ROEBUCK & COMPANY, Movants,

v.

William G. SCHWAB, Esq., Trustee in Bankruptcy for John Maloney and Christine Maloney, Respondents.

Bankruptcy No. 5–96–00402.

United States Bankruptcy Court, M.D. Pennsylvania. Wilkes–Barre Division.

May 12, 1997.

Charles Phillips, Wyomissing, PA, for Movant.

Joseph Murray, Wilkes–Barre, PA, for William G. Schwab.

James Watt, Allentown, PA, for Debtors.

William G. Schwab, Lehighton, PA, Chapter 7 Trustee.

### *OPINION AND ORDER*

JOHN J. THOMAS, Bankruptcy Judge.

Is a paralegal, employed in the office of counsel for a creditor, permitted to question a debtor at a meeting under 11 U.S.C. § 341?

This particular question comes to me by way of a Motion by Sears, Roebuck, & Company ("Sears") to reconvene a first meeting of creditors for the Debtors John C. Maloney and Christine Maloney. The Motion was originally opposed by the Trustee, William C. Schwab, as well as the Debtors. Subsequent to the hearing on this issue, the Trustee

withdrew his opposition to the Motion. Nevertheless, the Debtors continue to resist the reconvening of the first meeting. Furthermore, the United States Trustee has filed a Memorandum of Law in support of Sears' position.

At the original meeting of April 17, 1996, Matthew Mayer, a paralegal in the office of Baskin, Leisawitz, Heller & Abramowitch, P.C., counsel for Sears, was not permitted the opportunity to question the Debtors by the Trustee, Attorney William G. Schwab. According to the Trustee, allowing Mr. Mayer the opportunity to question the Debtors would constitute aiding a non-lawyer in the unauthorized practice of law in contravention of the Pennsylvania Rules of Professional Conduct.

The Commonwealth of Pennsylvania prohibits the unauthorized practice of law. 42 Pa.C.S.A. § 2524. Rule 5.5 of the Pennsylvania Rules of Professional Conduct bars a lawyer from aiding a nonlawyer in the unauthorized practice of law. Moreover, a special committee of the Pennsylvania Bar Association has considered this very issue and concluded that nonlawyers, whose questioning of a debtor is focused on legal matters in the Bankruptcy Code, "are engaged in the unauthorized practice of law." Pennsylvania Bar Association Unauthorized Practice of Law Committee Formal Opinion 96–108.

Historically, the courts have considered the examination of a bankrupt at the first meeting as the practice of law. *In re Looney,* 262 F. 209 (W.D.Tex.1920), *In re Scott,* 53 F.2d 89 (D.Mich.1931). Of special note is *Rinderknecht v. Toledo Association of Credit Men,* 13 F.Supp. 555, 558 (N.D.Ohio 1935), which acknowledged the professional nature of the examination of the bankrupt and addressed that concern by allowing a layperson to represent one individual creditor but not two or more. The court apparently reasoned that the referee was "clothed with ample control over abuses." *Id.* at 560. *See also In re H.E. Ploof Machinery Co.,* 243 F. 421 (S.D.Fl.1916).

The modern trend has been contrary. Several cases have discussed the issue of whether questioning of a debtor by a nonlawyer employee of a corporate creditor at a § 341 meeting constituted the unauthorized

practice of law. Those cases have concluded that such activity did not amount to the unauthorized practice of law. *In re Messier,* 144 B.R. 617, 619 (Bankr.D.R.I.1992), *In re Kincaid,* 146 B.R. 387, 388–89 (Bank. W.D.Tenn.1992), *In re Gravitt,* 1991 WL 497770 (Bankr.E.D.Ky.1991). It has also been held that questioning by a nonlawyer creditor was permissible and did not represent the unauthorized practice of law. *In re Clemmons,* 151 B.R. 860, 862 (Bankr. M.D.Tenn.1993).

These cases have generally relied on the administrative, rather than the adjudicative, nature of the proceedings. *State Unauthorized Practice of Law Committee v. Paul Mason & Associates, Inc.* 46 F.3d 469 (5th Cir.1995). Moreover, the *Clemmons* Court gave considerable weight to the economies of encouraging nonlawyer participation at the § 341 meeting.

Despite these decisions, a Virginia bankruptcy court has concluded that appearing on behalf of a *debtor* at a § 341 meeting did, indeed, constitute the unauthorized practice of law. *In re Tanksley,* 174 B.R. 434 (Bankr. W.D.Va.1994).

■ In determining what amounts to the unauthorized practice of law, bankruptcy courts generally turn to the laws of the locus state. *In re Skobinsky,* 167 B.R. 45, 49 (E.D.Pa.1994); *In re Campanella,* 207 B.R. 435, 1997 WL 177340 (Bankr.E.D.Pa.1997): *In re Herrera,* 194 B.R. 178, 191 (Bankr. N.D.Ill.1996); *Foulston v. Jones (In re Robinson),* 162 B.R. 319, 325 (Bankr.D.Kan. 1993); *In re Evans,* 153 B.R. 960, 966–67 (Bankr.E.D.Pa.1993); *In re Harris,* 152 B.R. 440, 444 (Bankr.W.D.Pa.1993); *In re Bachmann,* 113 B.R. 769, 772 (Bankr.S.D.Fla. 1990). Nevertheless, this Court must acknowledge the congressional prerogative of pre-emption by virtue of the Supremacy Clause of the United States Constitution. "'[T]he law of the State, though enacted in the exercise of powers not controverted, must yield' when incompatible with federal legislation." *Sperry v. Florida,* 373 U.S. 379, 384, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963), *citing Gibbons v. Ogden,* 9 Wheat. 1, 211, 6 L.Ed. 23 (1824).

The seminal case in Pennsylvania on the practice of law is *Shortz v. Farrell,* 327 Pa. 81, 193 A. 20 (1937). That case is instructive since it identifies the "three principal (sic) domains" of a lawyer's activity. First, a lawyer instructs and advises the client. Second, the lawyer prepares complex documents. Lastly, the attorney ...

> *appears for clients before public tribunals* to whom is committed the function of determining rights of life, liberty, and property according to the law of the land, in order that he may assist the deciding official in the proper interpretation and enforcement of the law. Since, in order to determine such rights, it is necessary first to establish the pertinent facts, which are frequently uncertain, controverted, and best ascertainable, as experience has demonstrated, by the application of rules of evidence tested by centuries of usage, *a lawyer, being technically fitted for the purpose, examines and cross-examines witnesses,* and presents arguments to jurymen to guide them to a proper determination of the facts. As ancillary to participation in trials and in legal argumentation, he prepares pleadings and other documents incidental to the proceedings.
>
> *In considering the scope of the practice of law mere nomenclature is unimportant, as, for example, whether or not the tribunal is called a 'court,' or the controversy 'litigation.' Where the application of legal knowledge and technique is required, the activity constitutes such practice even if conducted before a so-called administrative board or commission.* It is the character of the act, and not the place where it is performed, which is the decisive factor.

(emphasis ours)

*Shortz v. Farrell,* 327 Pa. 81, 84, 193 A. 20, 21 (1937).

The court in *In re Kincaid,* 146 B.R. 387, 390, (Bankr.W.D.Tenn.1992) referred to the § 341(a) meeting as providing "an opportunity for creditors to assemble, if desired, to ascertain information about the debtor" such as locating their collateral. *Id.* at 390. The implication of this statement was that a first meeting of creditors was purely a fact-finding inquiry into the status, condition, and whereabouts of assets of the estate. That conclusion is clearly at odds with the views of other courts.

Explaining the purposes and policies to be served by the first meeting of creditors, the legislative history of the new rule is terse but clear. The Senate Report reads: "the purpose of the examination [of the debtor at the first meeting] is to enable creditors and the trustee to determine if assets have improperly been disposed of or concealed or if there are grounds for objecting to the discharge." S.Rep. No. 989, 95th Cong., 2d Sess. 43, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5829. The wording of the House Report is virtually identical. H.R.Rep. No. 595, 95th Cong., 2d Sess. 332, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6288. Other authorities reflect a similar purpose. "The chief function of meetings of creditors is to provide the machinery for creditors to elect a trustee, examine the debtor, and be heard generally in an advisory' capacity on questions concerning the administration of the estate." 2 Collier on Bankruptcy, § 341.01 (15th ed.1985). "The purpose of the meeting is to give creditors and the trustees an opportunity to examine the debtor in respect to the debtor's acts, conduct, or property, or in respect to any other matter that may affect the administration of the estate or the debtor's right to a discharge." B. Weintraub & A. Resnick, Bankruptcy Law Manual § 1.11[3] (1980).

Besides structuring the proceeding, the primary purpose of the first meeting of creditors is to provide the creditors with the opportunity to gather information on any point that may affect their interest, including, of course, the possibility of fraudulent transfers or other conduct that might suggest that an objection to the discharge is in order.

*Allegheny International Credit Corp. v. Bowman,* 60 B.R. 423 (S.D.Tex.1986).

The original purpose of the first meeting is said to be to assist in the administration of the debtor's estate. 3 Lawrence P. King, Collier on Bankruptcy ¶ 343.02[2] (15th ed. rev.1996). If this conclusion was ever valid, I submit, it is no longer timely.

After October, 1994, the scope of the § 341 meeting was specifically altered by the following amendment.

11 U.S.C. § 341(d)

(d) Prior to the conclusion of the meeting of creditors or equity security holders, the trustee shall orally examine the debtor to ensure that the debtor in a case under chapter 7 of this title is aware of—

(1) the potential consequences of seeking a discharge in bankruptcy, including the effects on credit history;

(2) the debtor's ability to file a petition under a different chapter of this title;

(3) the effect of receiving a discharge of debts under this title; and

(4) the effect of reaffirming a debt, including the debtor's knowledge of the provisions of section 524(d) of this title.

Thus, the first meeting is no longer merely a fact-finding exercise. The proverbial door has been opened not only to the examination of the debtor as to discharge issues and the rationale behind the choice of chapter filing, but also to the inevitable *cross-examination* on reaffirming one's liability.

Negotiation of a reaffirmation agreement may not constitute the practice of law in some states. *In re Messier*, 144 B.R. 617 (Bankr.D.R.I.1992). In Pennsylvania, however, significant deference is given to the negotiation process.

While the objective valuation of damages may in uncomplicated cases be accomplished by a skilled lay judgment, an assessment of the extent to which that valuation should be compromised in settlement negotiations cannot. Even when liability is not technically 'contested', an assessment of the likelihood that liability can be established in a court of law is a crucial factor in weighing the strength of one's bargaining position. A negotiator cannot possibly know how large a settlement he can exact unless he can probe the degree of unwillingness of the other side to go to court. Such an assessment, however, involves an understanding of the applicable tort principles (including the elements of negligence and contributory negligence), a grasp of the rules of evidence, and an ability to evaluate the strengths and weaknesses of the client's case vis a vis that of the adver-

sary. The acquisition of such knowledge is not within the ability of lay persons, but rather involves the application of abstract legal principles to the concrete facts of the given claim. As a consequence, it is inescapable that lay adjusters who undertake to negotiate settlements of the claims of third-party claimants must exercise legal judgments in so doing. It has been well said that '(t)he conduct of litigation is by no means all of legal practice. A lawsuit is but one process of settling an issue of legal right and wrong. Many are disposed of without suit. But the disposition of such issues for others, by advice and negotiation, for hire, is as much the practice of law as though process and pleadings, with or without trial, were necessary. Counsel as to legal status and rights, and conduct in respect thereto, are as much a special function of the English solicitor and the American lawyer as diagnosis, prognosis, and prescription are in the special field of medicine.' Fitchette v. Taylor, 191 Minn. 582, 254 N.W. 910, 911 (1934).

*Dauphin County Bar Assn. v. Mazzacaro*, 465 Pa. 545, 554, 351 A.2d 229, 233 (1976).

While the *Mazzacaro* case involved a claims adjuster, the negotiation of reaffirmation agreements in bankruptcy may provide a more compelling rationale for the conclusions made by that case, especially in light of the current abusive practices such as recently reported in *In re Latanowich*, 207 B.R. 326 (Bankr.D.Mass.1997); *In re Hovestadt*, 193 B.R. 382 (Bankr.D.Mass.1996); *In re Iappini*, 192 B.R. 8 (Bankr.D.Mass.1995). A review of these cases are reminders of the havoc possible when creditors attempt to negotiate binding documents free from the restraints of codes of conduct applicable to attorneys. It proves prophetic the following observation in *Shortz v. Farrell.*

While, in order to acquire the education necessary to gain admission to the bar and thereby become eligible to practice law, one is obliged to 'scorn delights, and live laborious days,' the object of the legislation forbidding practice to paymen [sic] is not to secure to lawyers a monopoly, however deserved, but, by preventing the intrusion of inexpert and unlearned persons in the

practice of law, to assure to the public adequate protection in the pursuit of justice, than which society knows no loftier aim. There is also another consideration to which it may not be amiss to refer. There has been such an enormous development in recent years of administrative and quasi-judicial boards of all kinds, that, unless their proceedings and decisions are guided by persons learned in the history, development, and philsophy [sic] of legal principles, the decline may be very rapid from government characterized by supremacy of law to one of haphazard and arbitrary rule—a degeneration from liberty to oppression. Satisfaction in the existence of laws, however efficient and adequate they may be, is wholly illusory if they are not properly and wisely interpreted (footnote omitted).

*Shortz v. Farrell,* 327 Pa. 81, 91, 193 A. 20, 24 (1937).

Furthermore, the 1984 amendments to 11 U.S.C. § 707(b) empower either the Court or the United States Trustee to move to dismiss a chapter seven consumer case for substantial abuse "but not at the request or suggestion of any party in interest. . . ." The Court is prohibited from attending a § 341 meeting. U.S.C. § 341(c). The United States Trustee, or its designee, presides at that meeting. U.S.C. § 341(a), U.S.C. § 102(9). It is beyond cavil that a consumer chapter seven creditor is typically better served if the debtor's case is dismissed rather than the debt discharged. The first meeting of creditors provides a valuable opportunity to bring out such factors as would influence the United States Trustee, or the designee conducting such meeting, to prosecute such motion. Indeed, what other opportunity would a creditor have without running afoul of the prohibited "suggestion"? If the creditor is successful in "motivating" the trustee to act, then the creditor is not inclined to expend its own funds in dismissal motions pursuant to other sections and/or rules.

The standard which has been articulated in Pennsylvania is that one is engaged in the practice of law whenever and wherever the services require legal knowledge, training, skill, and ability beyond those possessed by the average man.

*In the Matter of Arthur,* 15 B.R. 541, 546 (Bankr.E.D.Pa.1981).

The conclusion becomes inescapable that Congressional amendments have refined the first meeting into a battleground where guile and strategy will win the day. These amendments have expanded the scope of inquiry at the § 341 meeting so as to lend significant strategic value to the creditor's examination. I, therefore, hold that the examination of a debtor at a first meeting of creditors constitutes the practice of law as that term is interpreted in Pennsylvania.

As indicated earlier, however, state law "must yield" if inconsistent with the bankruptcy statute.

11 U.S.C. § 343 of the Bankruptcy Code reads as follows:

> The debtor shall appear and submit to examination under oath at the meeting of creditors under § 341(a) of this title. *Creditors, any indenture trustee, any trustee or examiner in the case, or the United States trustee may examine the debtor.* The United States trustee may administer the oath required under this section (emphasis ours).

In this section, Congress has authorized the individuals identified to pose questions of the debtor regardless of their absence of a license to practice law. This interpretation is supported by Federal Rule of Bankruptcy Procedure 9010(a) which authorizes named individuals to appear "on their own behalf." This is consistent with the statutory directive that parties may plead and conduct their own cases personally in all courts of the United States (setting aside, for the time being, whether the bankruptcy court is such a court). 28 U.S.C. § 1654.

■ Having decided that the questioning of a debtor at the first meeting of creditors is the practice of law but that federal law has preempted state law as to those individuals entitled to participate in this examination, I must next address whether the presiding officer, the trustee, is authorized to expand that list set forth in § 343 to include others not indicated.

First, I note, that Rule 9010(a) of the Federal Rules of Bankruptcy Procedure supplements § 343 by allowing attorneys to act

on behalf of their principal. That Rule reads as follows:

A debtor, creditor, equity security holder, indenture trustee, committee or other party may (1) appear in a case under the Code and act either in the entity's own behalf or by an attorney authorized to practice in the court, and (2) perform any act not constituting the practice of law, by an authorized agent, attorney in fact, or proxy.

Two major treatises, as well as legislative history, state that § 343 is derived from section 21a of the Bankruptcy Act. 3 Lawrence P. King, Collier on Bankruptcy ¶ 343.LH. (15th ed. rev.1996); 2 Bankruptcy Service, L. Ed. § 17:28 (Clark Boardman Callaghan 1996); H.R.Rep. No. 595, 95th Cong., 1st Sess. 332 (1977): S.Rep. No. 989, 95th Cong., 2d Sess. 43 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787. This conclusion may not be accurate.

While section 21a of the Bankruptcy Act of 1898 provides that the Court may, upon application, compel any person to be examined "concerning the acts, conduct, or property of a bankrupt," it is section 7a(10) of the Act that requires the bankrupt, *at the first meeting of his creditors,* to submit "to an examination concerning the conducting of his business, the course of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition all matters which may affect the administration and settlement of his estate or the granting of his discharge...." In addition, consistent with section 7a, section 55b of the Act obliges the Court to examine, or cause to be examined, the bankrupt at this first meeting. While section 55b specifically authorizes the Court "to permit creditors to examine [the bankrupt]," Rule 205(b) expanded that authority by allowing the Court to permit "any party in interest to examine the bankrupt" at the first meeting. Contrast this provision with Rule 205(a) which authorizes the Court to order the examination "of any person" upon application of "any party in interest," presumably under section 21a.

The distinction between section 7 and section 21a is discussed in *In re Bogen,* 19 F.2d 935, 936 (E.D.S.C.1927) and *In re Emigh,* 243 F. 988 (N.D.N.Y.1917). "This section [§ 21a] presupposes a special examination and a special order for the examination. It may be had at the time of the first meeting of creditors [under section 7a], but is not necessarily a part of the proceedings at such first meeting." *In re Emigh,* 243 F. 988, 988 (N.D.N.Y.1917).

Section 21a and Rule 205(b) appear to provide the historical foundation for current Rule 2004, while sections 7a(10) and 55a and Rule 205(a) form the basis for current § 343.

I believe it is significant that Congress, with full knowledge that, under the Act, only the Court and those entities permitted by the Court could examine the debtor at the first meeting, chose to specifically articulate those authorized to question the debtor at the first meeting under the Code. I conclude that, while creditors can examine the debtors and attorneys for creditors can examine the debtors, no authority exists to allow an employee of an attorney for a creditor such opportunity. Furthermore, no provision comparable to Rule 205(b), as earlier referred to, authorizes the presiding officer to expand that list. I, therefore, hold that the Bankruptcy Code does not permit a party, unidentified in § 343, to conduct an examination of the Debtors at their § 341 meeting, except as permitted by Rule 9010(a)(2).

Based on this discussion, the Motion of Sears to reconvene the § 341 meeting to allow an attorney's employee to question the Debtors is denied.