**TENNESSEE ENVIRONMENTAL COUNCIL, INC.**

v.

**TENNESSEE WATER QUALITY CONTROL BOARD.**

Court of Appeals of Tennessee, at Nashville.

March 8, 2007 Session.

Oct. 3, 2007.

Permission to Appeal Denied by Supreme Court March 10, 2008.

---

14. Mark Twain: "Courage is resistance to fear, mastery of fear-not absence of fear." *Pudd'nhead Wilson*, ch. 12 (1894).

Robert E. Cooper, Jr., Attorney General
and Reporter; and R. Stephen Jobe, Sen-

ior Counsel, Office of the Attorney General, for the appellant, Tennessee Water Quality Control Board.

Mary M. Mastin and Brian H. Paddock, Cookeville, Tennessee, for the appellee, Tennessee Environmental Council, Inc.

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., joined. WILLIAM B. CAIN, J., not participating.

## OPINION

The issue on appeal is whether the action of a non-attorney who prepares and signs a petition for declaratory judgment on behalf of a corporation to challenge a decision of the Water Quality Control Board constitutes the unauthorized practice of law. The corporation contends Tenn.Code Ann. § 4–5–305(a) authorizes a corporation to participate in administrative hearings by any authorized representative. The Department contended that such a practice in contested cases constitutes the unauthorized practice of law. Notwithstanding the fact that the statute provides that a duly authorized representative of a corporation may "participate" as the representative of the corporation in a hearing, we have determined that a non-attorney may not participate as the representative of a corporation if doing so requires the non-attorney to exercise the professional judgment of an attorney.

In 2004, Tosh Farms, a large agricultural facility in Huntland, Tennessee, sought to increase the number of swine raised at their facility. Due to the resulting increased discharge of animal waste, Tosh was required by the Federal Clean Water Act to obtain a National Pollution Discharge Elimination System ("NPDES") permit for the expansion of the swine facility, known under the Clean Water Act as a Concentrated Animal Feeding Operation ("CAFO").[1] Upon the request of Tosh Farms, the Tennessee Department of Environment and Conservation ("Department") issued a National Pollution Discharge Elimination System permit to Tosh Farms on June 30, 2004.[2]

One month later, the Tennessee Environmental Council ("Environmental Council") submitted a letter whereby it "petitioned the Water Quality Control Board for a declaratory order case in accordance with Tenn.Code Ann. § 4–5–223" to challenge the permit issued to Tosh Farms. In the letter, the Environmental Council also demanded "a hearing before the Water Quality Control Board as soon as possible to review this permit approval." The letter raised several issues the Environmental Council sought to address at the hearing, including a history of unredressed permit violations by the appellant, the potential effects of the waste disposal for contamination of drinking water supplies, the karst geology of the area which allows subsurface drainage of polluted waters, the absence of adequate geological investigation performed by soil and geological experts, and the potential breach of waste lagoon by extreme but foreseeable weather events.

On September 8, 2004, before the Board considered whether to grant or deny the request for a contested hearing, counsel for the Department filed a Motion to Dismiss and Motion to Prevent the Unautho-

---

1. *See* 33 U.S.C. § 1342; *see also* 33 U.S.C. § 1362(14). The NPDES permit would have allowed for an increase from 1,500 animal units of swine to 4,000 animal units of swine.

2. TDEC issues NPDES permits in conjunction with its authority under the *Water Quality Control Act of 1977* ("the Water Act"), Tenn. Code Ann. § 69–3–101 *et seq. See* 33 U.S.C. § 1342.

rized Practice of Law.[3] The basis of this contention was the fact the Environmental Council's letter was prepared and signed by Will Callaway, the Executive Director of the Council, who was not a licensed attorney. On September 17, 2004, Administrative Judge Steve Darnell granted the motion and dismissed the petition filed by the Environmental Council. The reason stated in the order was that Mr. Callaway's representation of the Environmental Council constituted the unauthorized practice of law.

Shortly thereafter, an attorney filed a Motion to Reconsider on behalf of the Environmental Council to contest the dismissal. The Administrative Judge denied the motion the following day. That same afternoon, when the contested case hearing had been scheduled to begin, the Administrative Judge explained his decision to the Board. He also advised the Board that it had no authority to review the order of dismissal or to conduct a contested case hearing. Over the objection of the Environmental Council, the Board accepted the explanation by the Administrative Judge and declined to convene a contested case hearing concerning the challenge to the Tosh Farms' permit.

The Environmental Council, through a licensed attorney, then filed a Petition for Judicial Review in the Davidson County Chancery Court on November 16, 2004. The Chancery Court heard oral arguments on June 8, 2005. On September 9, 2005, the Chancellor entered a Memorandum and Order reversing the dismissal by the Administrative Judge and reinstating the petition for a declaratory order. The Chancellor reasoned that the Uniform Administrative Procedures Act provides that

corporations are expressly authorized to initiate and participate in administrative proceedings through their corporate officers without the assistance of an attorney.

Having prevailed in the Chancery Court, the Environmental Council filed a Motion for Award of Attorney Fees pursuant to the *Equal Access to Justice Act* ("EAJA"), Tenn.Code Ann. § 29–37–101 *et seq.* Thereafter, the Chancellor entered a Memorandum and Order granting the motion for attorney fees.[4] This appeal followed.

Both parties present issues for our review. The Department raises two issues: (1) whether a corporation may file a petition for declaratory order initiating a contested case proceeding through a non-lawyer officer or agent; and (2) whether the *Equal Access to Justice Act*, Tenn.Code Ann. § 29–37–101 *et seq.*, authorizes an award of attorney fees under the circumstances of this case. The Environmental Council raises one issue: Whether an administrative judge may order dismissal of a petition for a declaratory ruling when the Water Quality Control Board has not acted to grant or deny a contested case proceeding under its own rules.

### APPELLATE REVIEW UNDER THE ADMINISTRATIVE PROCEDURES ACT

■ In the majority of cases, the judicial review of decisions of administrative agencies, when those agencies are acting within their area of specialized knowledge, experience, and expertise, is governed by the narrow standard contained in Tenn. Code Ann. § 4–5–322(h) rather than the broad standard of review used in other

**3.** The Department filed the motions with the Office of Administrative Hearings because the Board had not yet assigned the case to an administrative law judge.

**4.** The parties entered an Agreed Order for Stay of Judgment as to the award of attorney fees pending resolution of the appeal in this matter.

civil appeals. *Willamette Indus., Inc. v. Tenn. Assessment Appeals Comm'n,* 11 S.W.3d 142, 147 (Tenn.Ct.App.1999); *Wayne County v. Tenn. Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 279–80 (Tenn.Ct.App.1988); *CF Indus. v. Tenn. Pub. Serv. Comm'n,* 599 S.W.2d 536, 540 (Tenn.1980); *Metropolitan Gov't of Nashville v. Shacklett,* 554 S.W.2d 601, 604 (Tenn.1977).

■ The trial court may reverse or modify the decision of the agency if the petitioner's rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn.Code Ann. § 4–5–322(h)(1)–(5). However, the trial court may not substitute its judgment concerning the weight of the evidence for that of the Board. *Jones v. Bureau of TennCare,* 94 S.W.3d 495, 501 (Tenn.Ct.App.2002) (citing *Gluck v. Civil Serv. Comm'n,* 15 S.W.3d 486, 490 (Tenn. Ct.App.1999)). The same limitations apply to the appellate court. *See Humana of Tennessee v. Tennessee Health Facilities Comm'n,* 551 S.W.2d 664, 668 (Tenn.1977) (holding the trial court, and this court, must review these matters pursuant to the narrower statutory criteria). Thus, when reviewing a trial court's review of an administrative agency's decision, this court is to determine "whether or not the trial court properly applied the ... standard of review" found at Tenn.Code Ann. § 4–5–322(h). *Jones,* 94 S.W.3d at 501 (quoting *Papachristou v. Univ. of Tennessee,* 29 S.W.3d 487, 490 (Tenn.Ct.App.2000)).

■ Here, however, the controlling issue is whether the participation in a contested case through a representative of a corporation who is not a licensed attorney constitutes the unauthorized practice of law. Such a determination is a question of law. Our standard of review of a question of law is de novo without a presumption of correctness. *Northland Ins. Co. v. State,* 33 S.W.3d 727, 729 (Tenn.2000); *Nelson v. Wal–Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn.1999).

### ANALYSIS

■ As we noted in a related case of the same name as this one, *Tenn. Environ. Council, Inc. v. Water Quality Control Board,* No. M2005–02425–COA–R3–CV, 2007 WL 2827470, (Tenn.Ct.App. Sep. 27, 2007) (which we will refer to as the "Cumberland Yacht Harbor" case),[5] the Tennessee General Assembly has specifically authorized corporations to "participate" in administrative hearings through their representatives, without regard to whether the representative is a licensed attorney. *See* Tenn.Code Ann. § 4–5–305(a). The statute reads: "Any party may participate in the hearing in person or, if the party is a corporation or other artificial person, by a duly authorized representative." Tenn. Code Ann. § 4–5–305(a). Although the General Assembly is empowered to authorize a corporation to "participate" in certain

---

**5.** The Cumberland Yacht Harbor case was consolidated on appeal with this case for purposes of oral argument because the two cases presented similar but not identical issues. Due to the fact the Chancellors in the two cases reached differing conclusions and because the facts were substantially different, we elected to author two separate opinions.

administrative hearings through a non-lawyer representative, it does not have the authority to authorize a corporation's representatives to engage in conduct that constitutes the "practice of law." *See Petition of Burson,* 909 S.W.2d 768, 773 (Tenn. 1995). To the contrary, the Supreme Court of Tennessee possesses the sole and exclusive authority to regulate the practice of law and to define the unauthorized practice of law. *Id.* Only licensed attorneys may engage in the "practice of law" or the "law business" in Tennessee. *See* Tenn. S.Ct. R. 7, § 1.01.[6]

What constitutes the practice of law, or conversely the unauthorized practice of law is not always easily ascertainable. The standard adopted by the Supreme Court to determine the type of services that constitute the practice of law is as follows:

> Functionally the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer. The essence of the professional judgment of the lawyer is his educated ability to relate the general body and philosophy of law to a specific legal problem of a client; and thus, the public interest will be better served if only lawyers are permitted to act in matters involving professional judgment. Where this professional judgment is not involved, non-lawyers, such as court clerks, police officers, abstracters, and many governmental employees, may engage in occupations that require a special knowledge of law in certain areas. But the services of a lawyer are essen-

tial in the public interest *whenever the exercise of professional legal judgment is required.*

*Burson,* 909 S.W.2d at 775 (quoting Tenn. S.Ct. R. 8, EC 3–5) (emphasis added).[7]

■■■ A non-lawyer representative of a corporation may participate in administrative hearings provided the non-lawyer's "participation" does not constitute the practice of law. *Tenn. Environ. Council, Inc.* (Cumberland Yacht Harbor), 2007 WL 2827470, at *5. If the non-lawyer's participation as the representative of the corporation is put at issue, a determination must be made concerning "whether the non-lawyer's participation may require the exercise of professional legal judgment." *Id.* The one authorized to make that determination is the Administrative Judge assigned to the case. *See id.* at *8. (holding that the Administrative Judge must determine whether the non-lawyer's participation as the representative of a corporation constitutes the unauthorized practice of law when his participation becomes an issue).

■■■ As we learned in Cumberland Yacht Harbor, contested case hearings before the Water Quality Control Board are "formal, adversarial proceedings where rules of evidence and civil procedure are enforced, the parties file pleadings, often file briefs and motions, present argument[s], examine and cross-examine witnesses, and make opening and closing statements." *Tenn. Environ. Council, Inc.,* (Cumberland Yacht Harbor), 2007 WL 2827470, at *7. Other administrative

---

**6.** "No person shall engage in the 'practice of law' or the 'law business' in Tennessee, except pursuant to the authority of this Court, as evidenced by a license issued in accordance with this Rule, or in accordance with the provisions of this Rule governing special or limited practice." Tenn. S.Ct. R. 7, § 1.01.

**7.** The Code of Professional Responsibility was replaced by the Rules of Professional Conduct, and there is no comment equivalent to Ethical Consideration 3–5 in the new Rules; nevertheless, the changes do not affect the standard to be applied. *See Green,* 246 S.W.3d at 585.

cases, however, which are not contested cases, may be less formal, information gathering proceedings. *Id.*, at *8. In the less formal administrative proceedings, the corporation's representative need not be a licensed attorney. *Id.; see Burson,* 909 S.W.2d at 777.

The process of determining whether a representative's services constitute the practice of law is often fact intensive. *See Fifteenth Judicial Dist. Unified Bar Ass'n v. Glasgow,* No. M1996–00020–COA–R3–CV, 1999 WL 1128847, at *3 (Tenn.Ct.App. Dec.10, 1999). With that standard in mind, we examine the actions of Mr. Callaway to determine whether his participation constituted the unauthorized practice of law. The petition, which was in letter form, reads as follows:

Dear Sirs:

The Tennessee Environmental Council submits this complaint regarding the issuance of a NPDES permit (TN0077755) for Tosh Farms in Huntland, TN, and petitions the Water Quality Control Board for a declaratory order case in accordance with TCA 4–5–223.

Numerous individuals joined TEC in opposing the expansion of this operation because of the karst terrain that underlies the farm and prospective sprayfields. In addition, wells that provide drinking water and the intake for the city of Huntland's water supply are down gradient from the operation.

Foremost, why is TDEC granting a permit to an individual who has admitted to contaminating the surface and ground water with similar activities in the past. "Bad actor" provisions that apply to some state permits certainly should [sic] considered in this case. No action was taken against past violations, no remedies or fines have been implemented, and it appears the pond in question remains a threat to the local ground water.

This applicant should not receive a permit to expand this operation.

Additionally, TDEC acknowledges shifts in the underlying geology that have led to subsurface drainage of existing ponds. This history indicates shifts may occur in the newly constructed lagoons, potentially transporting all the liquid and solid waste to surface and ground waters. This area simply is not fit for an animal feeding operation of this size that causes such a significant threat to water supplies.

Tennessee water quality rules stipulate "that under no circumstances shall the commissioner issue a permit for an activity [which] would cause a condition of pollution, either by itself or in combination with others." The activities allowed by this permit will, at some point in the future, cause pollution or the surface or ground water in the area because of the karst terrain.

Two issues were not fully addressed by TDEC in issuing this permit. First, the lagoon is a designed control of runoff up to a 25–year, 24–hour rainfall event. Reports from the National Weather Service, the National Oceanic and Atmospheric Administration and the Climate Prediction Center all show that east Tennessee will experience greater than average precipitation and extreme events are more likely in southeast Tennessee. The 25 year event is likely to occur much more frequently, meaning the lagoon(s) would likely breach as frequently as once a decade.

Second, the karst system and overburden from agricultural operations on the eastern highland rim pose a greater threat to surface and groundwater. Existing regulations are not sufficient to protect water supplies for the local community. The rules of the state require that "a soils/geologic investigation shall

be performed by a soil scientist and qualified geologist" with deeper investigations required in karst regions. The applicant used a "technical representative" and did not investigate potential connections with groundwater for sprayfields. It should be noted that the initial permit application did not identify fields, acreage, volume or timetable for land application.

The U.S. Geological Survey (USGS) released a report May 2004 that finds the Lower Tennessee River Basin, and specifically the Eastern Highland Rim, shows "surface and ground water resources are vulnerable to contamination in karst areas," primarily from livestock wastes. The report further states livestock wastes contribute 85% of the nitrogen loadings to these streams (see attachments).

This report alone should raise a warning sign that animal feeding operations are not acceptable in this area, and if the state considers a permit, it must take extraordinary precautions to protect surface and ground water. The Tosh operation did not even submit a complete permit application according to the Notice of Determination issued by the state.

The state did not follow the guidelines for more significant investigations in karst areas, did not consider the sensitivity of the region and did not take into account the past violations of the applicant. The state is unfamiliar with the report issued by the USGS, and the commissioner should have utilized her authority to create a more protective lagoon system and better buffers in this area.

We request a hearing before the Water Quality Control Board as soon as possible to review this permit approval.

Sincerely,

/s/

Will Callaway

Executive Director

The Administrative Judge in this matter concluded that "[a] corporation cannot act *pro se* in a legal proceeding nor can it be represented by an officer or other non-lawyer agent in a legal proceeding." Thus, the Administrative Judge further concluded that Mr. Callaway's "[r]epresentation of the corporation before this board would require one to engage in the business of practicing law." Rather than rest his decision on the issue of "professional judgment," the Administrative Judge's rationale appears to be based on the Court's holding in *Old Hickory Engineering and Mach. Co., Inc. v. Henry,* 937 S.W.2d 782 (Tenn.1996) (holding that a corporation cannot act *pro se* in a court proceeding and cannot be represented by an officer or other non-lawyer agent); and Tenn. S.Ct. R. 7, § 1.01 (providing in essence that a license is required to engage in the "law business"). Based on his conclusion, the Administrative Judge dismissed the petition. The Chancellor reversed that decision and remanded the matter for further proceedings.

Believing that *Burson* was merely persuasive, and that *Haverty Furniture Co. v. Foust,* 174 Tenn. 203, 124 S.W.2d 694 (1939) was controlling, the Chancellor based her holding on the statutory definitions of the "practice of law" and the "law business" as did the *Haverty* court.[8] The

---

8. Haverty Furniture sold household furnishings to Bertha Foust for $66. When Foust failed to pay for her purchases, Haverty filed a writ of replevin, which was prepared by Reid Hartman, the Credit Manager of the

Haverty Furniture store in Chattanooga. Hartman, who was not a licensed lawyer, obtained the skeleton writ of replevin forms, filled in and signed the printed forms, and delivered the completed forms to a Justice of

practice of law was defined to be "the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any Court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies." *Haverty*, 124 S.W.2d at 697 (citing 1935 Pub. Acts ch. 30 § 1). The "law business" was then defined as "the advising or counseling *for a valuable consideration* of any person ... or corporation, as to any secular law, or the drawing ... *for a valuable consideration* of any paper ... affecting or relating to secular rights, or the doing of any act *for a valuable consideration* in a representative capacity, obtaining or tending to secure for any person ... or corporation any property or property rights whatsoever." *Id.* (citing 1935 Pub. Acts ch. 30 § 1).

■ Relying on *Haverty*, the Chancellor found it significant that Mr. Callaway was an employee of the corporation, that he was not "retained" by the corporation to represent it before the Board, and that he did not receive any additional compensation for signing and submitting the petition for a declaratory order. Applying these findings and the statutory definitions, the Chancellor concluded that Mr. Callaway was not engaged in the unauthorized practice of law because he was an employee and did not receive any additional or "valuable consideration" for drafting the petition. *Id.*, 124 S.W.2d at 697. We have

concluded it was error for the Chancellor to rely on *Haverty*. Instead of relying on *Haverty*, the Chancellor should have applied *Burson* which instructs that the determinative factor is whether the services rendered by the non-attorney requires the exercise of "the professional legal judgment of a lawyer." *Burson*, 909 S.W.2d at 777.

■ Some hearings before the Board are informal, information gathering proceedings wherein a non-attorney may participate as the representative of a corporation. *Tenn. Environ. Council, Inc.* (Cumberland Yacht Harbor), 2007 WL 2827470, at *8; Tenn.Code Ann. § 4–5–305(a). Conversely, there are "formal, adversarial proceedings where rules of evidence and civil procedure are enforced, the parties file pleadings, often file briefs and motions, ... examine and cross-examine witnesses, and make opening and closing statements." Contested case hearings are the more complex hearings conducted by the Board, as we learned in the Cumberland Yacht Club case. This is because

[t]he complexity of the procedures and content of a contested case hearing under the Uniform Administrative Procedures Act is further evident from the fact the parties are given a full opportunity to file pleadings, motions, objections, make offers of settlement, to engage in discovery, and compel the attendance of witnesses by subpoena pursuant to the Tennessee Rules of Civil Procedure. *See* Tenn.Code Ann.

the Peace of Hamilton County, who then issued the writ of replevin, and delivered it to a deputy sheriff for execution. After the writ was served and the case was set for trial, Hartman called a licensed attorney at the Chattanooga Bar who routinely represented Haverty, to notify him the case had been set for trial, and requested he try the case on

behalf of Haverty. The attorney appeared and conducted the trial of the case, after which judgment was rendered for Haverty. On appeal, the defendant contended the Credit Manager's participation constituted the practice of law. The appellate court concluded it did not. *Haverty*, 124 S.W.2d at 698.

§§ 4–5–308, –311. During the hearing of a contested case, the parties are also afforded an opportunity to present evidence, conduct cross-examination, and present rebuttal evidence. Tenn. Code Ann. § 4–5–312. At the conclusion of the contested case hearing, an order with findings of fact and conclusions of law is entered. Tenn.Code Ann. § 4–5–314. The significance of the proceedings in a contested case hearing and the need for able representation therein becomes even greater when a party seeks judicial review of the administrative proceedings and the rulings therein. This is because, the appellate review by the Chancery Court and then this court is limited to the record of the administrative proceedings. Tenn.Code Ann. § 4–5–322(g).

*Tenn. Environ. Council, Inc.* (Cumberland Yacht Harbor), 2007 WL 2827470, at *7.

■ When a non-lawyer's participation is put at issue, a determination must be made regarding the complexities of the proceedings and issues presented.

If the hearing is informal, e.g. rules of procedure or evidence are not followed and there is no direct or cross-examination of witnesses, and the hearing is essentially a non-adversarial, informal gathering sessions wherein information is merely shared, then no legal training, skill, or judgment is required, and thus, a law license is not required. *See Burson*, 909 S.W.2d at 771. If, however, the proceeding is more formal, e.g. a party expects to engage in direct or cross-examination of witnesses and rules of evidence are expected to be followed, then the matter is not an informal gathering session wherein information is merely shared, and therefore, legal training, skill, or judgment is essential. *Id.* at 776. (holding that the services of a

lawyer are essential in the public interest whenever the exercise of professional legal judgment is required.) In such proceedings, if a non-lawyer were to participate as the representative of a corporation, he or she would be engaged in the unauthorized practice of law.

*Tenn. Environ. Council, Inc.* (Cumberland Yacht Harbor), 2007 WL 2827470, at *8. Therefore, when the participation by a non-lawyer as the representative of a corporation is put at issue, a determination must be made concerning "whether the non-lawyer's participation may require the exercise of professional legal judgment." *Id.* Such a determination is fact intensive in most disputes concerning the unauthorized practice of law. *See Fifteenth Judicial Dist. Unified Bar Ass'n,* 1999 WL 1128847, at *3.

■ The fact-dependent analysis by the Administrative Judge would include an inquiry of whether the petition merely triggers an informal, information-gathering proceeding or, alternatively, formal adversarial proceedings as in a contested case proceeding. *Tenn. Environ. Council, Inc.* (Cumberland Yacht Harbor), 2007 WL 2827470, at *8. In the Cumberland Yacht Club case we determined that the corporation's petition for a declaratory order presented complex issues requiring a contested case hearing that would necessitate the corporation's representative exercise professional legal judgment.

The obvious complexities of this matter arise from the petition submitted to the Board on February 11, 2004. This is because the petition puts at issue several complex issues, including: (1) whether Mill Creek, as a "303(d) listed stream" and the "activity allowed in the permit" would further degrade the water quality by increasing pollutants, including siltation, organic enrichment and further decreasing dissolved oxygen levels; (2)

whether the existence of the Nashville crayfish has been documented and recognized by the Department; (3) whether the increased surface area for parking, oil and gas from boats and runoff from the development will contribute to impairment and exacerbate water quality problems; (4) whether the Department failed to consider the overall, long-term impacts of the project and the possible degradation of water quality; (5) whether as a 303(d) list stream, Mill Creek is considered a priority for water quality improvement efforts and thus needs additional pollution controls; (6) whether the Department's issuance of a 401 certification for this project ignored the Department's own guidance on 303(d) listed streams until the sources of pollution have been controlled; and (7) whether a project of this size and impact is inappropriate for a stream the size of Mill Creek that is already impaired.

*Tenn. Environ. Council, Inc.* (Cumberland Yacht Harbor), 2007 WL 2827470, at *7.

 Our examination of the record before us reveals the issues presented are just as complex as the issues presented in the Cumberland Yacht Club case. The only facts available for examination in this case are contained in petition submitted by Mr. Callaway on behalf of the Environmental Council for a declaratory order. The petition puts at issue several complex issues, including: (1) whether "karst terrain" underlies the farm and prospective sprayfields; (2) whether wells that provide drinking water and the intake for the city of Huntland's water supply are down gradient from the operation; (3) why the Department granted a permit to an individual who has admitted to contaminating the

surface and ground water with similar activities in the past; (4) whether "bad actor" provisions that apply to some permits should apply to this case; (5) whether there were past violations for which no remedies or fines were implemented; (6) whether, due to the underlying geology, the area is fit for an animal feeding operation of this size; (7) whether the issuance of the permit would cause a condition of pollution in combination with other operations; (8) whether the karst system and burden from agricultural operations on the eastern highland rim poses a greater threat to surface and groundwater; and (9) whether the state followed the guidelines for more significant investigations in karst areas, considered the sensitivity of the region, and took into account the past violations of the applicant.[9]

The petition for a declaratory order identifies issues that require the Environmental Council's representative to exercise professional legal judgment not only in the formal, adversarial proceedings that will certainly follow, but in the drafting of such a complex petition. The court in *Old Hickory Engineering and Mach. Co., Inc. v. Henry*, 937 S.W.2d 782 (Tenn.1996), held that "[t]he preparation and filing of a complaint requires 'the professional judgment of a lawyer,' and is, therefore, the practice of law." *Id.* at 786 (citing *Burson*, 909 S.W.2d at 776). In addition to placing emphasis on the "professional judgment" requirement, the court in *Old Hickory*, based its decision, *inter alia*, on the fact that the complaint in that case was for an action for negligence, which is governed by the Tennessee Rules of Civil Procedure. The Court reasoned that a corporation

---

9. As we noted in the Cumberland Yacht Club case, whether all of the issues presented require the professional judgment of an attorney is debatable. Nevertheless, several of the issues raised by the Environmental Council would require the professional judgment of an attorney, and therefore, the Environmental Council could not participate in a contested case hearing without being represented by a licensed attorney.

cannot act *pro se* in a court proceeding, and thus by filing a complaint under the Tennessee Rules of Civil Procedure, the corporation cannot comply with Tenn. R. Civ. P. 11, which requires the signature of at least one attorney and affirmations that the pleading is essentially filed in good faith with legal and factual support.[10] *Old Hickory*, 937 S.W.2d at 785; *see Doyle Shirt Mfg. Corp. v. O'Mara*, No. 01–A–01–9711–CH00670, 1999 WL 187160, at *2 (Tenn.Ct.App. Apr.7, 1999) (holding that the plaintiff's complaint, which was signed by its non-attorney corporate president, was inadequate). The Court, after concluding that the plaintiff did not act promptly to cure the deficiency in the pleading, dismissed the complaint.

Having considered the foregoing principles and the complexity of the issues presented in the petition for a declaratory order, we find the Administrative Judge was justified to dismiss the petition for a declaratory order due to the fact it was not signed by a licensed attorney acting on behalf of the corporation, the Tennessee Environmental Council, Inc.

 As we noted in the Cumberland Yacht Club case, we wish to state that we are not holding that all petitions submitted by corporations in administrative

matters require the signature and participation of a licensed attorney.[11] To the contrary, if the letter or petition does not trigger adversarial proceedings, wherein the rules of evidence may be enforced, adversarial pleadings may be filed, or direct and cross examination of witnesses may be involved, but instead sets the stage for a more informal, information gathering proceeding, the corporation's representative need not be a licensed attorney.

This holding is evident from our ruling in the Cumberland Yacht Club case and another recent opinion of this court, that being *Green v. Carthage General Hosp., Inc.*, 246 S.W.3d 582 (Tenn.Ct.App.2007). In that matter, a non-attorney employee of the hospital prepared, signed and filed with the Probate Court Clerk's Office a simple form to assert a claim for a debt owed by the decedent. After conducting a fact finding inquiry, the court found the proof insufficient to establish that preparing and filing a claim for a debt required the professional judgment of a lawyer. As the court explained:

> [F]iling a claim for debts due from a decedent does not require the exercise of the professional judgment of a lawyer. Such claims are in essence demands for payment. Many employees or owners of

---

**10.** Tenn. R. Civ. P. 11.01 also states, "[a] party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address." The Court, however, in holding that a corporation must be represented by an attorney in a court proceeding, ruled that there is no opportunity for a corporation to sign its own pleading in court proceedings governed by the Tennessee Rules of Civil Procedure.

**11.** The Department does not contend that only a lawyer may participate on behalf of a corporation in an administrative hearing. To the contrary, it is acknowledged that such occurs in many informal administrative proceedings. This practice was confirmed in a 1994 study conducted by Dean Hill Rivkin

and Fred T. Bell, in which they examined "to what extent non-lawyers regularly represent individuals and firms involved in grievances before governmental bodies in Tennessee." In a telephone interview by the authors with Alan Leiserson, General Counsel for the Tennessee Department of Environment and Conservation, Mr. Leiserson is quoted as stating, "In all but the contested cases before the administrative law judges, non-lawyer representation is permitted." Dean Hill Rivkin & Fred T. Bell, *Nonlawyer Representation in Administrative Proceedings in Tennessee: A Field Study*, pg. A–10 (Commissioned by Nat'l Council of Prop. Tax Consultants (Mar. 8, 1994)).

businesses make similar demands daily and are quite competent to make an informal statement of the amount due with necessary backup documentation. Although the claims statutes require some specific inclusions, they are straightforward and do not require legal training to understand. Many clerks' offices have forms to assist creditors, and the claim filed in this case appears to be such a form. Even if a statutory formality is omitted, a claim can be amended to correct such a deficiency. *Green,* 246 S.W.3d at 586 (citations omitted). The facts at issue here and in the Cumberland Yacht Club case are substantially different, and the issues presented are more complex than those presented in *Green.*

As the Administrative Judge concluded, the record reveals that the complexities of the issues presented in the Environmental Council's petition for a declaratory order require that its representative exercise the professional judgment of a lawyer, and since its representative was not a licensed attorney, his actions constituted the unauthorized practice of law. We therefore reverse the decision of the Chancery Court, and by doing so, affirm the decision of the Administrative Judge to dismiss the petition for a declaratory order by the Environmental Council. Having affirmed the dismissal of the petition, there is no contested case proceeding before the Board and thus no hearing to be conducted.

 In addition to the foregoing, the Environmental Council contends that the Administrative Judge had no authority to dismiss the petition prior to the Board having the right to grant or deny a contested case hearing. We have concluded

this contention is without merit. This is because the Environmental Council fails to recognize the important distinction between a contested case proceeding and a contested case hearing. The *Official Compilation Rules and Regulations of the State of Tennessee,* Rule 1360–4–1–.05, which is entitled "Commencement of Contested Case Proceedings," states, *"[a] contested case proceeding may be commenced . . . by request for hearing by an affected person, or by any other lawful procedure."* [12] Tenn. Comp. R. & Reg. 1360–4–1–.05. (emphasis added).

 The existence of a contested case *proceeding* is not dependent upon whether the administrative agency convenes a contested case *hearing.* A contested case *proceeding* is triggered by a petitioner's filing of a petition for a declaratory order in which a hearing is requested. Tenn. Comp. R. & Reg. 1360–4–1–.05. The Environmental Council correctly notes that an agency, such as the Water Quality Control Board, may elect to convene a contested case hearing following the filing of a petition for a declaratory order. *See* Tenn.Code Ann. § 4–5–223(a). The right of the Board to elect to convene a contested case hearing, however, is dependent upon there being a valid petition for a declaratory order on file.

This matter became a contested case proceeding once the Environmental Council filed its petition requesting a hearing, and the role of the Administrative Judge was activated once the Department filed its Motion to Dismiss and Motion to Prevent the Unauthorized Practice of Law. One of the duties of an administrative judge set forth in the UAPA is to decide "any procedural question of law." Tenn.

12. Under the UAPA, a corporation is considered a "person." Tenn.Code Ann. § 4–5–102(9).

Code Ann. § 4–5–301(b). The issue of whether Mr. Callaway, a non-attorney, could file a petition for a declaratory order on behalf of a corporation constituted a procedural question of law. Therefore, the Administrative Judge had the authority to decide the issue.

The Administrative Judge determined that Mr. Callaway's letter, which he submitted on behalf of the Environmental Council, constituted the unauthorized practice of law, and therefore, did not constitute a valid petition for a declaratory order. Whereupon, the petition was dismissed. Once the invalid petition was dismissed, there was no contested case proceeding pending for the Board to consider as a request for a contested case hearing.

 As an additional issue, the Environmental Council also asserts that the dismissal of the petition prior to issuance of public notice of its filing circumvented the requirements set forth in Tenn.Code Ann. § 4–5–224. The statute provides that an agency shall give written notice of the *hearing* to the Secretary of State for publication and shall take such other steps as the agency deems necessary to give notice to other agencies or professional associations that are likely to have an interest in the proceedings. *Id.* What the Environmental Council fails to recognize, however, is that the notice requirement pertains to the scheduling of a hearing, not the filing of a petition. Tenn.Code Ann. § 4–5–224 only requires that the agency petitioned for declaratory order provide notice of the hearing, not the filing of a petition. In this matter, the petition was dismissed prior to the scheduling of a hearing. Thus, the agency was under no duty to send out notice.

---

**13.** An issue raised by the Department, that of whether the Environmental Council was entitled to recover its attorney's fees pursuant to the Equal Access to Justice Act, Tenn.Code

### In Conclusion

We therefore respectfully reverse the decision of the trial court and reinstate the decision of the Administrative Judge dismissing the petition for a declaratory order. Because the Environmental Council is no longer the prevailing party, it is not entitled to recover its attorney's fees.[13] Accordingly, the award of attorney's fees is vacated.

This matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the Tennessee Environmental Council, Inc.

WILLIAM B. CAIN, P.J., not participating.

---

Ann. § 29–37–101 *et seq.,* has been mooted by the fact the Environmental Council did not prevail in this action. We decline to address the issue since it is now moot.