IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE Assigned on Briefs June 19, 2012

## CAULEY McCILTON CROSS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Marshall County No.
2011-CR-64Robert Crigler, Judge**

**No. M2012-00020-CCA-R3-PC - Filed January 18, 2013**

The petitioner, Cauley McCilton Cross, appeals the denial of his petition for post-conviction relief. The petitioner is currently serving an effective ten-year sentence in the Department of Correction following his convictions for two counts of aggravated sexualbatteryand three counts of exhibition of obscene materials to a minor. On appeal, he contends that the postconviction court erroneously denied his petition because the proof established that he was denied his right to the effective assistance of counsel. On appeal, he specifically contends that trial counsel was ineffective for failing to file a motion to dismiss the charges against the petitionerbased upon a constitutionalchallenge to Tennessee Code Annotated section 39-13504. Following review of the record, we affirm the denial of relief.

**Tenn. R. App. P 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, PJ., and THOMAS T. WOODALL, J., joined.

David J. McKenzie, Lewisburg, Tennessee, for the appellant, Cauley McCilton Cross.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Charles Frank Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Procedural History and Factual Background

The charges against the petitioner arose from his actions involving his nine-year-old

stepson, the boy victim, and a twelve-year-old girl, the girl victim, who lived next door.[1]The petitioner, his wife, the boy victim, and his twelve-year old brother had lived in this home for approximately one year. The girl victim was a frequent visitor to the home as she and the petitioner's two stepsons often played together. On March 29, 2008, the girl victim visited the petitioner's home for most of the day, which was spent playing outside, watching movies with the family, and playing video games. After a late dinner, the petitioner asked the three children if they would like to watch a movie with him. All four proceeded into the living room and sat on the couch, and the children observed that a movie was already playing. The movie was titled "Zandalee" and starred Nicholas Cage. The movie was an uncut version and included multiple graphic sex scenes and nudity. The three children attempted to avert their eyes during these scenes. During the movie, the girl victim felt the boy victim's hand on her left breast. She moved his hand away several times, but "it just kept coming back." The girl victim observed the petitioner's hand manipulating the boy victim's hand in order to touch her breast. The girl victim said the movement was not accidental on the petitioner's part and that her breast was touched at least five times. The girl victim eventually removed herself from the couch, and no more incidents occurred.

After the movie, the girl victim's mother called her daughter's cellphone, which was answered by the petitioner. After the call, the petitioner informed the girl victim that she would be spending the night at their house, and, because she was afraid to go home alone after dark, the girl victim agreed. The next morning, the three children went next door and informed the girl victim's mother what had occurred the previous evening. During this conversation, the petitioner entered the girl victim's family home, without knocking, and stated that it was "just all a joke."

The petitioner was subsequently indicted by a Marshall County grand jury for two counts of aggravated sexual battery and three counts of exhibition of obscene material to a minor. The petitioner was convicted as charged and sentenced to an effective term of ten years in the Department of Correction. Following the denial of his motion for new trial, the petitioner filed a direct appeal with this court, in which he argued: (1) that the evidence was insufficient to support his aggravated sexual battery convictions; (2) that his sentences for aggravated sexual battery were excessive; and (3) that the aggravated sexual battery convictions should merge. *State v. Cauley McCliton Cross*, No. M2009-01179-CCA-R3-CD (Tenn. Crim. App., at Nashville, May 25, 2011). After review, this court affirmed the convictions and sentences as imposed. *Id*.

On June 23, 2011, the petitioner filed a pro se petition for post-conviction relief asserting a myriad of grounds for ineffective assistance of counsel. Among those grounds were that trial counsel was ineffective for: (1) failing to obtain, research records, and crossexamine witnesses with regard to a similar claim of abuse made by the girl victim in Texas; (2) failing to file a motion to dismiss because the facts of the case did not support the

---

[1]

In an effort to protect the identity of the minor victims involved in this case, this court has chosen to refer to them by "the boy victim" and "the girl victim" rather than by name or initials.

statutory requirements and elements of aggravated sexual battery because there was no direct contact between the petitioner and the girl victim; (3) failing to file a motion to dismiss on grounds that the aggravated sexual battery statute was unconstitutionally vague and ambiguous; and (4) failing to elicit proof that the petitioner's wife was cheating on him. A post-conviction hearing was subsequently held at which the petitioner and trial counsel offered testimony.

The petitioner began by noting that he and trial counsel did not see "eye to eye" on evidentiary materials. He indicated that trial counsel visited him only three times in the eight months he was incarcerated pending trial. The petitioner faulted trial counsel for failing to call certain alibi witnesses to testify at trial and to introduce phone records to further this defense. However, he acknowledged that the witnesses would only be able to testify to his presence throughout the day, not at the time of the incident. However, he felt this would damage the credibility of the other witnesses who testified that he was present at the home all day. With regard to the witnesses that did testify at trial, the petitioner felt that trial counsel did not effectively cross-examine them, *i.e.*, ask the questions the petitioner wanted him to ask. He also claimed trial counsel waived his preliminary hearing without his consent, refused to let him take a lie detector test, failed to secure an independent medical examination, and failed to introduce into evidence a receipt which established that the petitioner's wife was the one who actually obtained the movie which was shown to the children.

The petitioner was very upset that trial counsel failed to secure records from Texas regarding a prior false allegation made by the girl victim against her father. The petitioner stated that he had learned of the prior events from the girl victim's father when he confronted him. He was told that the allegations were proven to be false and that they had been made to get attention. The petitioner indicated that he made trial counsel aware of these events, but he was informed that it was hearsay and could not be used.

The petitioner testified that he asked trial counsel to file a motion to dismiss the charges against him. The only ground to support the motion advanced by the petitioner during his testimony at the hearing was that he was innocent of the charges.

Trial counsel testified that he was appointed to the case and began his representation at the circuit level. He indicated that he visited with the petitioner on at least six occasions prior to trial and reviewed discovery materials with him. Trial counsel testified that, in his opinion, it would not have been beneficial to call witnesses to establish an alibi for earlier in the day because the petitioner had admitted that he was there at the time of the crime. With regard to a lie detector test, trial counsel did not recall the petitioner asking to take one. However, he testified that if the petitioner had done so, he would not have allowed it because they are inadmissible in court and he did not trust their results. When questioned about a motion to dismiss because the petitioner was innocent of the charges against him, trial counsel responded that there was "no such animal" because that was the purpose of a jury trial- to determine if a defendant is innocent of the charges against him.

-3

Trial counsel did acknowledge that the petitioner had informed him of a prior false claim of sexual contact made by the girl victim against her father. He stated that his investigator went to their home, but no one there would speak with him. Absent the information as to the facts or at least the location, trial counsel had no way to further investigate the prior instance. Moreover, he testified that even if he had known where in Texas to began his search, the Department of Children Services usually would not speak about prior false claims. Regardless, trial counsel testified that he did not believe the information would have swayed the jury, as the petitioner's two stepchildren were present during this crime and confirmed the girl victim's story.

After hearing the evidence presented, the trial court denied the petition. This timely appeal followed.

## Analysis

On appeal, the petitioner contends that the post-conviction court erred in denying his petition because he was denied his right to the effective assistance of counsel. In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A.§ 40-30-103 (2010); *Howellv.State*,151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonablyeffective" assistance of counsel under

both the Sixth Amendment to the United States Constitution and Article I, Section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88. Failure to satisfy either prong results in the denial of relief. *Id*. at 697.

Fordeficientperformance,the petitionermustshow that"counsel'srepresentation fell below an objective standard of reasonableness" under prevailing professionalnorms,despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 687-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297

S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

As his sole allegation of ineffective assistance of counsel, the petitioner has asserted that trial counsel was deficient for failing to file a motion to dismiss the charges against him on the ground that Tennessee Code Annotated 39-13-504 was unconstitutional. He further faults trial counsel for allegedly not recognizing that a motion to dismiss even existed, *i.e.*, trial counsel's testimony that "no such animal" exists. With regard to the statute's constitutionality, he contends that there was an unresolved ambiguity in the law with regard to this statute at the time of his conviction. The basis for his entire assertion is a statement by this court on direct appeal: "In apparently a matter of first impression, we hold that [the boy victim] was a victim because we interpret the definition of sexual contact to include touching the intimate parts of a third party by or through another victim." *Cross*, No. M2009-01179-CCA-R3-CD. The petitioner parlays that statement into the argument that "[i]f the underlying criminal matter was one of first impression, then axiomatically the interpretation of the aforesaid penal statute created by this Honorable Court was not in existence at the time of the [petitioner's] criminal trial." He asserts that he "was convicted of a crime for which his specific

actions were not 'plainly and unmistakably' proscribed at the time he was charged." Based upon these contentions, he argues that a motion to dismiss upon constitutionality grounds challenging vagueness and violation of ex post facto rights would have been favorable.

Initially, we must point out that the petitioner has taken trial counsel's statement that "no such animal" as a motion to dismiss existed wholly out of context. We agree with the petitioner that Tenn. R. Crim. P. 12(a) does delineate that such a motion does exist in the criminal court context. However, trial counsel's statement that no such motion existed was made in the context of the petitioner's testimony regarding a motion to dismiss because he was innocent of the charges. Trial counsel responded that a motion to dismiss was not the proper vehicle in that instance but rather that was the purpose of a jury trial. We agree. Trial counsel cannot be faulted for failing to file a motion to dismiss on grounds of innocence prior to trial. Moreover, as pointed out by the post-conviction court, the issue of prejudice was foreclosed by this court's holding that the evidence was sufficient to support the conviction.

While we note that the issue of a motion to dismiss based upon the constitutionality of the statute was raised in the petitioner's pro se petition for relief, we must agree with the State that the record of the post-conviction hearing is devoid of any proof that the petitioner's desired motion to dismiss was based upon anything other than his self-proclaimed innocence. No proof was offered to support a finding that such a motion to dismiss would have been successful if it had been filed. The post-conviction court's findings of facts and conclusions of law are devoid of any reference to a motion to dismiss on constitutional grounds. Other than a mere conclusory allegation in his petition, we can find no mention of the issue. The petitioner may not now advance an argument that trial counsel was ineffective for failing to file a motion to dismiss upon this ground when he failed to raise it before the post-conviction court. *See State v. Adkisson*, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994). Therefore, relief is not warranted.

We make clear that our reading of the petitioner's brief leads us to conclude that he is asserting only an ineffective assistance of counsel claim based upon the failure to file a motion to dismiss and not a challenge to the constitutionality of the statute itself. Nonetheless, because the question of constitutionality of a statute may be raised at any time, in the interest of finality and completeness, we will briefly address the constitutionality of the statute in question. *See State v. Sowder*, 826 S.W.2d 924 (Tenn. Crim. App. 1991).

As pointed out by the State, this statute has previously been upheld against a vagueness challenge. *See State v. Schimpf*, 782 S.W.2d 186 (Tenn. Crim. App. 1989) (superseded by statute on other grounds). In light of that precedent, we cannot conclude that a comment made by this court on direct appeal regarding first impression can support a vagueness challenge at present. That comment cannot support the petitioner's claim that he was convicted of a crime which was not defined at the time of its commission. The crime was defined and in existence at the time the petitioner committed it. That this court noted for the first time that the petitioner's specific conduct was included in the statute based upon its plain meaning and definitions does not equate to the conclusion that the statute was unconstitutional.

Likewise, the petitioner's challenge to the statute under the ex post facto provisions of the constitution is not well-taken. An ex post facto violation under article I, section 11 of the Tennessee Constitution occurs whenever a law (1) "provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent," (2) "aggravates a crime or makes it greater than when it was committed," (3) "changes punishment or inflicts a greater punishment than the law annexed to the crime when it was committed," (4) "changes the rules of evidence and receives (sic) less or different testimony than was required at the time of the commission of the offense in order to convict the offender," and (5) "in relation to the offense or its consequences, alters the situation of a person to his disadvantage." *Miller v. State*, 584 S.W.2d 758, 761 (Tenn. 1979) (citing *Calder v. Bull,* 3 U.S. 386 (1798*); State v. Rowe*, 181 A. 706, 709-10 (1935)). The statute under which the petitioner was convicted was in effect at the time he committed the acts for which he was charged. As noted above, it withstands a vagueness challenge. Thus, because

it was in existence  and clearly defined, there is no ex post facto violation present.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-7